Submitted February 26, affirmed July 29, 2009, petition for review denied January 21, 2010 (347 Or 533)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## KILEY D. AMADOR,
*Defendant-Appellant.*

Multnomah County Circuit Court
051237389; A135475

213 P3d 846

Peter Gartlan, Chief Defender, Legal Services Division, and Shawn Wiley, Chief Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Linda Wicks, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

**BREWER, C. J.**

Defendant appeals his conviction, after a trial to the court on stipulated facts, for possession of methamphetamine, *former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005), arguing that his consent to a search of his person was obtained in violation of his rights under Article I, section 9, of the Oregon Constitution. We affirm.[1]

Shortly after midnight, a Portland Police Officer saw defendant driving a car with a defective rear brake light. The officer initiated a traffic stop just as defendant pulled his car into the driveway of a residence that the officer knew, from his frequent patrols in the area, had been the scene of numerous controlled substance-related arrests. The officer testified that he intended to stop the car for the brake-light violation, not because defendant had pulled into the driveway of the house. According to the officer, "[defendant] just happened to land there." The officer pulled his cruiser in behind defendant's car and activated his overhead light bar. Defendant had already begun to get out of his car and walk toward the house; the officer got out of his cruiser and "immediately told him to stop because I was stopping him for * * * the violation." The officer testified that he ordered defendant to stop about "five seconds" after he stopped his cruiser behind defendant's car. After the officer told defendant to stop, defendant began walking back toward him, and the officer asked to see defendant's driver's license. Defendant, after "stuttering a little bit as if he was stalling and reaching into his pockets," gave the officer an Oregon identification card. The officer testified that this was "an issue" for him because it demonstrated that defendant had been driving without a driver's license. The officer's request for defendant's consent to a search came about "30, 40, 50 seconds, still under a minute" into the encounter. The officer testified that he was speaking to defendant in a "conversational tone" and that defendant was "pretty nonchalant" when he consented to the search.

---

[1] Defendant also assigns error to the trial court's admission of the laboratory report identifying the substance he possessed as methamphetamine, on the ground that doing so violated his confrontation rights under the Oregon and federal constitutions. We reject that argument without discussion. *See, e.g., State v. Willis*, 219 Or App 268, 183 P3d 891, *rev den*, 345 Or 416 (2008).

After obtaining defendant's Oregon identification card, the officer

"identified him from his I.D. card as [defendant]. His nervous behavior continued and he kept putting his hands in and out of his pockets as if he was still looking for a license that he already proved to me that he didn't have. Because he was digging around into his pockets, I asked him if he had any illegal drugs or weapons on him, and he said no.

"* * * * *

"[PROSECUTOR]:   What's your thought at this point?

"[OFFICER]:   That he possibly had a weapon on him. I didn't know why he was acting nervous, digging in and out of his pockets. I didn't like it.

"[PROSECUTOR]:   So what did you do?

"[OFFICER]:   I asked him if he had any weapons or drugs on him, and he said no. And then I asked him if I could search him for those items, and he said, quote, yeah, go ahead."

The officer searched defendant and found a small baggie containing a clear crystal substance that he recognized as methamphetamine. The officer arrested defendant for possession of drugs; according to the officer, he arrested defendant three minutes after initiating the traffic stop.

The trial court then articulated its view of the evidence:

"Based on the testimony I have heard so far, it—on a more-likely-than-not standard, it seems that the officer responded to pocket fidgeting after I.D. card and location to ask have you got any drugs or weapons. I agree with the officer-safety angle is pretty attenuated * * * but probably there, just as a matter of course, everything I know about—everything I learned about police work is hands in pockets are concerned, but he didn't articulate that as a big deal.

"His—his big deal is the drug house, drug neighborhood, nervous guy, I now have reasonable suspicion to think that he may have contraband or weapons on him. If those are the facts, and it seems so far, unless I'm missing something, that that's more likely than not. And what he then said was a question, do you have any drugs or weapons, no, I don't; do

you mind if I look, sure, go ahead, which is an exchange that is probably repeated around this city more common tha[n] I love you, from the testimony I've heard at least. Maybe I have a strange perception of the world but this is a very common exchange.

"The narrow question is whether there's enough reasonable suspicion to justify the question do you have drugs or weapons."

A colloquy between the prosecutor, defense counsel, and the court ensued, during which defendant's counsel argued that

"the officer stopped him for a traffic stop but never addressed the traffic stop, so the defense would, first of all, assert that this was a fishing expedition for any type of illegal activity.

"* * * * *

"* * * His first—basically his first exchange [w]as for the license, and then once he found out that he didn't have a license, he immediately jumped to do you have illegal drugs or weapons."

Defendant's counsel argued that the officer lacked reasonable suspicion to ask about drugs or weapons because neither defendant's behavior nor his presence in a high-crime, high-vice area at night was sufficient to furnish the officer reasonable suspicion that defendant was involved in criminal activity. According to defendant, ORS 810.410 did not authorize the officer to ask the question because,

"under [State v.] Amaya[, 176 Or App 35, 44, 29 P3d 1177 (2001), aff'd, 336 Or 616, 89 P3d 1163 (2004)] * * *, the statute only authorizes police inquiries that are reasonably related to the traffic violation. And the officer never even really got there. He asked for his I.D. and he got that, and then he—rather than asking about the brake light or citing him for the brake light, he instead asked if he had any illegal drugs or weapons."

The prosecutor replied:

"In this particular case * * * [defendant is] lawfully stopped, there was probable cause [for the] traffic violation * * *. Under the statutory authority, an officer is allowed to

and for a reasonable amount of time for the particular traffic violation stop the person and may inquire into that particular traffic violation."

The prosecutor continued:

"[W]hat I was going to add as my pertinent issue or a pertinent issue in this case would be a dispositive issue is that under [ORS] 810.410, subsection * * * (2) or (3)(E) and (D). Mine is more about (D), but we're talking more about (E)—may at any point in time ask a person during a lawful stop for permission to search that person for drugs or weapons absent reasonable suspicion.

"* * * * *

"It tells us that as a reasonable suspicion an officer during the course of a lawful stop may ask this question. He has done so. He did not unreasonably expand the scope of the stop. It was done within time. As you stated before, there was no problem as to the voluntariness of the—of the defendant's response, he acted well within the law, and I believe that this gets us one absolute reason that he's allowed to do this, do the search, and he find the drugs that were at."

Defendant's counsel replied that, despite the statutory authorization in ORS 810.410, the officer's question violated Article I, section 9, because the officer lacked reasonable suspicion that defendant was involved in criminal activity. In defendant's view,

"[e]ven if the statute authorizes [the officer's question], it's a violation of the constitutional rights to unlawfully expand the scope of the traffic stop.

"The officer has to have some basis for the question[.]"

The trial court then ruled on defendant's motion to suppress:

"Okay. The narrow issues that it seems to me that I'm stuck on, at least at this point, is whether the statute can do what it obviously attempts to do, which is to authorize during a lawful traffic stop an inquiry as to drugs or weapons in the absence of reasonable suspicion of drugs or weapons. * * *

"* * * * *

"So I think *Amaya* actually says pretty directly that the statute does not need to be read to require reasonable suspicion to render a constitution (*sic*). So the statute can do what it purports to do, which is to say that during the course of a lawful traffic stop, the officer can ask about drugs and weapons without reasonable suspicion.

"I * * * feel, although that's room for argument, I think that's what *Amaya* does. And I think it's—it's also constitutional as applied to a situation where there's no unlawful seizure. There was a lawful seizure here. There was no coercion added to the request for consent. All the statute purports to do is authorize a request for consent on these topics. And * * * I think *Amaya* leads us to the conclusion that that's got to be constitutional even without reasonable suspicion.

"* * * * *

"The record is complete. It doesn't really matter what I find because that is tantamount to reasonable suspicion. There's no finding of fact here which—as to which deference to the trial court makes any difference at all.

"I mean, the officer said what he said. I found that there's no credibility here. The officer did not say why it was that nervousness, going into the pockets, not including the change pocket that he went into to get the meth, didn't explain why that would create a reasonable suspicion of drugs or weapons.

"* * * * *

"Nonetheless I agree that there was no coercion, that this was during the course of a traffic stop based on possible cause to conclude that a traffic violation, namely, the brake light, had been committed. * * *

"* * * * *

"* * * [The officer] still had the right to ask questions because it was during the course, within three minutes of the stop. The statute says he can do it. I don't see how absent coercion or unlawful seizure there's a constitutional issue left * * *.

"* * * * *

"Motion is denied."

Defendant waived his right to a jury trial, proceeded to trial on stipulated facts, and was convicted. This appeal followed.

On appeal, defendant raises two challenges to the lawfulness of the search: first, that the officer unlawfully expanded the scope of the traffic stop by asking about drugs or weapons without reasonable suspicion and, second, that the officer unlawfully extended the duration of the stop. It follows, defendant argues, that his consent to the search was the product of a prior illegal stop and thus should be suppressed. The state counters that defendant's "unlawful extension" argument is unpreserved and that his "scope of the stop argument" is foreclosed by our decision in *Amaya*. We agree with the state.

■■ We first address defendant's argument that the officer unlawfully expanded the scope of the stop by asking defendant about drugs and weapons. As we held in *Amaya*, questioning during a lawful stop on a matter unrelated to the basis for that stop does not require independent reasonable suspicion concerning the unrelated matter. 176 Or App at 44; *see also State v. Williams*, 206 Or App 432, 434 n 2, 136 P3d 1201 (2006) (declining to revisit *Amaya*); *State v. Duffy*, 176 Or App 49, 53, 29 P3d 1222 (2001), *rev den*, 337 Or 669 (2004) (following *Amaya*). Defendant argues that we should revisit the holding in *Amaya*. We decline that invitation and, accordingly, reject defendant's argument that the officer unlawfully expanded the scope of the encounter when he asked defendant about drugs and weapons after obtaining his Oregon identification card. At that point in the encounter, the traffic stop was still ongoing: the officer had only just obtained defendant's identification and thus did not yet have all the information necessary to issue a citation for the malfunctioning brake light. *Cf. State v. Broughton*, 221 Or App 580, 584, 193 P3d 978 (2008) (traffic stop completed when officer had all the information necessary for issuing a citation including defendant's identification, car insurance, and registration papers and had completed a warrants and license suspension check). It follows that, under ORS 810.410, the officer was authorized to inquire about drugs and weapons during the course of an ongoing, lawful, traffic stop.

We further conclude that defendant's alternative argument—that the officer unlawfully extended the duration of the stop—was not presented to the trial court and, accordingly, is unpreserved. An issue is preserved for appellate review if the trial court has had the opportunity to "identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). To preserve a claim that a trial court improperly denied a motion to suppress evidence as a result of an unlawful seizure, a defendant must present to the trial court an argument as to why a specific action of an officer constituted a seizure. *Amaya*, 336 Or at 630. A defendant who "failed to make any argument to the trial court that [an officer] stopped * * * [the defendant] when he took [the defendant's] license" did not preserve for appellate review an argument that the taking of the defendant's license constituted an unlawful stop. *Id.* at 628. Nonetheless, the Supreme Court has cautioned that the requirement that a defendant present each discrete legal theory could lead to problems "if the preservation onion is sliced too thinly." *Id.* at 629.

Here, of the two discrete legal theories defendant advances on appeal, he presented only one to the trial court. Defendant engaged the prosecutor and the trial court in an extensive colloquy regarding the lawfulness of the officer's actions, including an extended discussion of our holding in *Amaya* and the proper construction of ORS 810.410. What defendant did not do, however, was argue that the officer had unlawfully extended the *duration* of the encounter. Defendant's characterization of the officer's questions as "basically bootstrapping a traffic stop into a fishing expedition for drugs or weapons" aptly summarizes the breadth of defendant's argument to the trial court, an argument that dealt exclusively with the *scope* of the officer's questions, not the duration of the encounter.[2] Because defendant failed to preserve

_____

[2] The only mention of a "duration of stop" analysis came from the prosecutor, who explained to the trial court:

"We heard and I think the argument *would be* that—defense argument would be that this has been an unlawful extension of a stop. And I was in great pains to make sure that everybody here knew that at the time that the question was asked that we were no more than three minutes into his stop.

his argument that the officer unlawfully extended the duration of the encounter, we do not address the merits—if any—of that argument.

Affirmed.

---

"I don't think on the sense or any other version of how you would like to think about this case, it gets to the fact that three minutes would be an unlawful extension of this particular stop, that in our common sense and in our own experience that traffic stops are going to last longer than three minutes.

"THE COURT: So an officer can, under Oregon law as it now exists, properly stop somebody and in the course of asking for license and registration say do you have any drugs or weapons, may I search.

"[PROSECUTOR]: Your honor, what I was going to add as my pertinent issue or a pertinent issue in this case would be a dispositive issue is that under [ORS] 810.410, subsection—let me make sure I get this right."

(Emphasis added.) The prosecutor and the trial court then proceeded to discuss ORS 810.410 and, when defendant again addressed the court, his argument was solely that ORS 810.410 did not authorize the officer's questioning of defendant because that questioning violated his rights under Article I, section 9, by expanding the scope of the encounter. The prosecutor's passing reference to a "duration of the stop" argument not being made by defendant at trial cannot render that argument preserved for use by defendant on appeal. *See, e.g., Clinical Research Institute v. Kemper Ins. Co.*, 191 Or App 595, 608, 84 P3d 147 (2004) (defendants' reference at trial to an argument not being made by the plaintiffs held insufficient to preserve that argument when plaintiffs subsequently advanced it in the Court of Appeals).

*State v. Parkins*, 346 Or 333, 211 P3d 262 (2009), is not to the contrary. There, the court held that the defendant had adequately preserved his assignment of error despite having told the trial court that "that's not our issue." *Id.* at 337. The defendant, the court held, had identified the legal issue, pointed out the lead case, and applied that case to the facts *prior to* telling the trial court, in effect, that "that's not our issue." *Id.* at 337-38. Moreover, the trial court indicated that it understood the defendant's argument, and explicitly rejected it. *Id.* at 338. Thus, the court held, defendant had satisfied the functional requirements of the preservation rule. *Id.* Here, by contrast, defendant neither identified the "duration of the stop" issue nor pointed out the controlling case or relevant facts. Indeed, defendant never made the "duration of the stop" argument and sat silently when the prosecutor referred in passing to that issue.