Submitted May 27, affirmed October 28, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STARR SIMCOX,
*Defendant-Appellant.*

Deschutes County Circuit Court
07FE0339ST; A138016

220 P3d 98

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, Appellate Division, filed the brief for appellant.

John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant, who was convicted of possession of methamphetamine, ORS 475.894, argues that the trial court erred in denying her motion to suppress evidence of drugs found in her pocket during a consensual search. Defendant asserts that the search violated her rights under Article I, section 9, of the Oregon Constitution. For the reasons set forth below, we agree with the trial court that defendant's rights were not violated. Accordingly, we affirm.

We take the facts as the trial court found them, because they are supported by evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Officer Barber was on patrol in the early morning hours and observed three people in a park that was closed for the night, which he knew to be a violation of a city ordinance. Barber stopped his car and turned on his hazard lights some distance away from the three people, then walked toward them. The three people also walked toward Barber. One of the three, defendant, initiated a conversation with Barber, stating that she was lost. Barber asked defendant if she knew that the park was closed. Defendant replied that she did not, then added that she had been in court earlier that day and that her "warrant had been released." Barber then asked defendant her name, which she told him. Barber gave her name to another officer because he suspected, based on what she had said and on his knowledge that he had seen her name on a warrant list the previous week, that there might be an outstanding warrant for her arrest.[1] Because defendant and her companions were acting nervous, Barber asked defendant if she had any weapons or contraband, and she said that she did not. Barber then asked if he could search defendant, and she consented to a search. He informed defendant that she was not under arrest and that the search was for his safety. During that search, Barber found drugs. Also during the search, Barber received information from the dispatcher that defendant was on probation but had no outstanding warrants.

---

[1] Barber incorrectly wrote down defendant's name and, at first, gave the incorrect name to the other officer, who knew defendant's correct name. The other officer was able to get information from the dispatcher concerning defendant.

Defendant moved to suppress evidence found during the search, arguing that Barber had stopped defendant when he approached and asked her to identify herself and that Barber lacked any basis for asking defendant about weapons or contraband, or for asking for consent to search. Defendant analogized the situation to a traffic stop, arguing that it would have been permissible for Barber to issue a citation to defendant for being in the park after hours, but that questioning her about contraband and seeking permission to search were beyond the scope of what Barber was permitted to do under the circumstances. The trial court rejected defendant's arguments, concluding that defendant was not stopped when she and Barber approached each other and began conversing, and further concluding that, even if defendant had been stopped, the questions that Barber asked were within the permissible scope of the stop. As explained below, we agree with the trial court and therefore affirm.

As an initial matter, we note that the parties argue extensively about whether defendant was stopped, for purposes of Article I, section 9, when Barber approached her, when he asked her name, when he radioed in information about her, when he questioned her about contraband, or when he asked for consent to search. The parties debate the implications of our recent case law concerning such issues, *see, e.g., State v. La France*, 219 Or App 548, 184 P3d 1169 (2008), and *State v. Highley*, 219 Or App 100, 180 P3d 1230 (2008), and disagree about how those cases should apply to these facts. We conclude, however, that we need not determine at what point defendant was stopped because, as explained below, even assuming that she was stopped at the beginning of the encounter, the stop was not unlawful.

Before he approached defendant, Barber had observed that she was in a park after it was closed, in violation of a city ordinance. Thus, Barber did, in fact, have probable cause to cite defendant for violation of the ordinance. Barber's testimony at the suppression hearing indicated that, when he approached defendant, he had not decided whether to cite her for violation of the ordinance. That, however, is not dispositive. As noted, when Barber first spoke to defendant, he inquired about whether she knew that the park was closed, after which defendant volunteered that

there had been a warrant for her arrest but that it had been "released." That comment, coupled with Barber's recollection that he had seen defendant's name on a warrant list, caused him to initiate an investigation into her warrant status. *See* ORS 131.615 (concerning scope of inquiries during reasonable suspicion stops). Thus, assuming that defendant was "stopped" at that point in the encounter, the stop was justified by Barber's having probable cause to issue a citation for the park violation and further justified because Barber reasonably suspected that a warrant might still be outstanding for defendant.

Defendant appears to acknowledge that Barber was legitimately investigating her for violating the ordinance, but goes on to argue that Barber unlawfully expanded the stop or extended its duration by inquiring about whether she had contraband and seeking consent to search. *See, e.g., State v. Kirkeby*, 220 Or App 177, 185 P3d 510, *rev allowed*, 345 Or 301 (2008). The first problem with defendant's argument is that, other than certain appellate court decisions involving the application of ORS 810.410 to traffic stops (and not applicable to the present circumstances), no authority supports the proposition that an officer cannot, during the course of a stop that is supported by reasonable suspicion or probable cause, inquire whether the stopped person is carrying weapons or contraband. *See State v. Amaya*, 176 Or App 35, 44, 29 P3d 1177 (2001), *aff'd*, 336 Or 616, 89 P3d 1163 (2004) (questioning during a lawful stop on a matter unrelated to the basis for that stop does not require independent reasonable suspicion). The second problem with defendant's argument is that the record does not support a determination that Barber extended the duration of the stop when he inquired about weapons and contraband and requested consent to search; rather, the record indicates that those events transpired before Barber received the communication from dispatch concerning defendant's warrant status.

Thus, we conclude that, regardless of when defendant was stopped, the stop was lawful, and Barber's questions that led defendant to consent to a search were permissible. Accordingly, we conclude that the trial court correctly denied defendant's motion to suppress evidence.

Affirmed.