Argued and submitted March 16, 2011, affirmed April 18, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LEE GORDON LAMB,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0801385; A142140

277 P3d 581

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

BREWER, J.

_____

* Brewer, J., *vice* Rosenblum, S. J.

**BREWER, J.**

Defendant was convicted of one count of possession of methamphetamine, ORS 475.894, and 11 counts of encouraging child sexual abuse in the first degree, ORS 163.684, based on evidence found during and after a stop by the police that defendant contends was unlawful. Defendant assigns error to the trial court's denial of his motion to suppress that evidence. Defendant acknowledges that he was initially lawfully stopped by the police for violating a TriMet smoking regulation, but he contends that the stop became unlawful when the officers asked him if he possessed any weapons. The state contends that there was no constitutionally significant additional restriction on defendant's freedom and, alternatively, that any restriction was justified by officer safety concerns. We affirm.

We state the facts consistently with the trial court's findings, which are supported by evidence in the record. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). Officers Humphreys and Dauchy were on patrol at around 4:00 p.m. at the Milwaukie Transit Center. They saw defendant smoking in a bus kiosk in which a "no smoking" sign was posted, a violation of TriMet Code 28.15(A)(2). Humphreys got out of the patrol car and approached defendant while Dauchy parked the car. Defendant, who had stepped out of the kiosk, saw Humphreys and got on his bicycle as if to ride off. Humphreys stepped in front of him and told him to "hold on." Defendant stopped.

Humphreys told defendant that he had stopped him for smoking in the kiosk. Humphreys immediately noted that defendant seemed extremely nervous and that he kept bouncing his left leg, which was resting on the pedal of his bicycle. According to Humphreys, defendant was "unkempt [with] kind of a ruddy appearance, indicative to me of somebody who uses methamphetamine * * *." Humphreys asked defendant for identification. He said he did not have any, so Humphreys asked for his name and date of birth. Defendant gave him the information, which Humphreys wrote in his notebook. During this exchange, Dauchy arrived and stood at defendant's side.

After telling Humphreys that he did not have identification, defendant reached for his jacket pocket. Humphreys was concerned that defendant could be reaching for a weapon, so he told defendant to keep his hands where Humphreys could see them. He then asked defendant, "Do you have any weapons on you or anything that might cause me concern, that might poke or stick me?" Defendant replied that he had a syringe and began to reach for his pants pocket with his left hand. Humphreys "grabbed his hand and stopped him from going all the way to his pocket." He asked defendant whether the syringe was capped. Defendant said that it was and then volunteered that he had found the syringe on the ground and was going to take it to the Milwaukie Police Station.

At that point, based on his observations, Humphreys suspected that defendant was in possession of illegal drugs. He asked whether defendant had any drugs on his person. Defendant said that he had two baggies in a wallet that he had found on the street and began to reach behind him toward his right rear pocket. Dauchy grabbed defendant's hand and stopped him. Humphreys asked if he could get the wallet out of defendant's pocket and look at the baggies, and defendant consented. After Humphreys retrieved the wallet, Dauchy placed defendant's hand back on the handlebars of his bicycle. Humphreys handed the wallet to Dauchy, who found two baggies containing a small amount of what appeared to be methamphetamine. The officers placed defendant under arrest. A minute to a minute and a half had passed between the time the officers initially contacted defendant and the time they arrested him. The officers then searched defendant's backpack and discovered child pornography. A subsequent investigation revealed more child pornography on defendant's computer. Defendant was charged with possession of a controlled substance, two counts of failure to report as a sex offender, and 13 counts of first-degree encouraging child sexual abuse.

Defendant asked the court to suppress the evidence, arguing, as pertinent to this appeal, that Humphreys's inquiry about weapons had constituted an unlawful seizure. Defendant argued:

"Now, you can ask officer safety questions under [*State v.*] *Bates*, [304 Or 519, 524, 747 P2d 991 (1987),] during the violation stop, if the officer has reasonable suspicion, based upon specific and articulate facts that the citizen might pose an immediate threat of serious physical injury to the officer or other officers or others, and they may take reasonable steps to protect themselves. So that essentially is the standard.

"Now, was there any question—at no time during this two days that we have had this hearing did the officers ever say that [defendant] ever posed any immediate threat of serious physical injury, which is the standard under the statute.

"* * * * *

"So that's where the inquiry should end, because in this case, where they first ask the name; he gives them his name. The next question, the second thing they ask immediately, according to the officer's testimony is: Do you have any weapons or kind of items of concern or drugs or things that poke? Basically an officer safety question.

"So at that point, even though they only asked one single question, even though there is no way [defendant] can go anywhere * * * There is no way there is a concern for officer safety when they ask that question about whether he has any weapons or items on him at that juncture.

"* * * * *

"The question for the weapons is improper. And it is that very point in the stop that everything kind of flows from that. They are trying to bring—you know, kind of probable cause in this case to say: Well, from weapons we get to needles; from needles we get to drugs in wallet. From drugs in wallet we get to backpack; and backpack we get to search the computer.

"And the inquiry should stop right at that get-go where they are not allowed to ask about weapons, because they don't have any reasonable suspicion whatsoever that this is going to lead to any kind of serious, you know, harm whatsoever."

The trial court denied defendant's motion and, following a trial to the court, defendant was convicted of most of the charges.[1]

Defendant renews his arguments on appeal. He concedes that he was lawfully stopped after the officers observed him smoking in the TriMet kiosk, but argues that the "valid stop turned into an unlawful seizure at the point Officer Humphreys asked him if he had any weapons, or anything that could poke or stick Humphreys." Defendant contends that "[t]hat question, combined with the two officers' show of authority, was a significant limitation on defendant's freedom of movement and was not justified by reasonable suspicion of criminal activity or officer safety concerns." Defendant also argues, in the alternative, that Humphreys's question about weapons "unlawfully extended the duration of the otherwise valid stop." Accordingly, defendant concludes, his consent to the search of his wallet and backpack was the product of that unlawful seizure, and the challenged evidence should have been suppressed.[2]

The state replies that this case is controlled by *State v. Amaya*, 176 Or App 35, 29 P3d 1177 (2001), *aff'd*, 336 Or 616, 89 P3d 1163 (2004), and *State v. Simcox*, 231 Or App 399, 220 P3d 98 (2009). Based on those decisions, the state reasons that, because defendant was already lawfully stopped, Humphreys's question about weapons did not constitute a separate, unlawful seizure. Alternatively the state argues that Humphreys's question was justified under the officer safety doctrine articulated in *Bates*. Because we agree with the state that *Amaya* and *Simcox* are controlling, we need not reach the parties' alternative arguments concerning the officer safety doctrine.

We begin with preservation. An issue is preserved for appellate review if the trial court had the opportunity to "identify its alleged error with enough clarity to permit it to

---

[1] The court acquitted defendant of both counts of failure to register as a sex offender and two counts of encouraging child sexual abuse.

[2] Defendant also argues on appeal that the encounter was unlawfully extended under *State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010). As explained below, defendant failed to preserve that argument in the trial court; accordingly, we decline to address it.

consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). To preserve a claim that a trial court improperly denied a motion to suppress evidence as a result of an unlawful seizure, a defendant must present an argument to the trial court explaining why a specific action of an officer constituted a seizure. *Amaya*, 336 Or at 630. A defendant who "failed to make any argument to the trial court that [an officer] stopped * * * [the defendant] when he took [the defendant's] license" does not preserve for appellate review an argument that the taking of the defendant's license constituted an unlawful stop. *Id.* at 628. Nonetheless, the Supreme Court has cautioned that the requirement that a defendant present each discrete legal theory could lead to problems "if the preservation onion is sliced too thinly."[3] *Id.* at 629.

Here, of the two discrete legal theories defendant advances on appeal, he presented only one to the trial court— that is, that Humphreys's question constituted an unlawful seizure that was not authorized by the officer safety doctrine. Defendant did not argue that the question impermissibly *extended* the stop. Because defendant failed to preserve his argument that the officer unlawfully extended the duration of the encounter, we do not address the merits of that argument. *See State v. Amador*, 230 Or App 1, 9-10, 213 P3d 846 (2009), *rev den*, 347 Or 533 (2010) (defendant, in arguing that officer unlawfully expanded the scope of a traffic stop, did not preserve the argument that officer had unlawfully extended the duration of the stop).[4]

---

[3] At this juncture, it is worth pointing out that defendant does not argue that the officers' actions *after* Humphreys's question regarding weapons constituted additional unlawful seizures. For example, defendant does not argue that Humphreys's order to him to "keep his hands where I could see them," or Humphreys's or Dauchy's acts of grabbing defendant's arm to prevent him from reaching his pockets, in and of themselves, constituted unlawful seizures. Defendant's argument before the trial court and on appeal is simply that Humphreys's question concerning weapons *alone* constituted an unlawful seizure. As we explain below, it did not.

[4] In the course of orally ruling on defendant's motion, the trial court stated that the officers had not "inappropriate[ly] lengthen[ed]" the encounter. Defendant said nothing regarding that statement. The trial court's passing reference to an "inappropriate lengthening" argument not being made by defendant at trial cannot render that argument preserved for use by defendant on appeal. *See Amador*, 230 Or App 1, 9 n 2.

We now turn to defendant's argument that Humphreys's question constituted an unlawful seizure. In *Simcox*, an officer was on patrol in the early morning hours and observed three people in a park that was closed for the night, which the officer knew to be a violation of a city ordinance. 231 Or App at 401. The officer stopped his car and turned and walked toward the people. The three people also walked toward the officer. One of the three, the defendant, initiated a conversation with the officer, stating that she was lost. The officer asked the defendant if she knew that the park was closed. The defendant replied that she did not, then added that she had been in court earlier that day and that her "warrant had been released." *Id.* The officer then asked the defendant for her name, which she told him. The officer gave the defendant's name to another officer because he suspected, based on what she had said and on his recollection that he had seen her name on a warrant list the previous week, that there might be an outstanding warrant for her arrest. Because the defendant and her companions appeared to be nervous, the officer asked her if she had any weapons or contraband, and she said that she did not. The officer then asked if he could search the defendant, and she consented to a search. During that search, the officer found drugs. During the search, the officer also received information from the dispatcher that the defendant was on probation but had no outstanding warrants. *Id.*

The defendant moved to suppress that evidence, and the trial court denied her motion. *Id.* at 402. On appeal, the defendant argued that several of the officer's actions, including his question to her regarding drugs or weapons, had constituted an unlawful stop. We rejected those arguments, explaining that the officer's initial encounter with the defendant had been lawful, because the officer had probable cause to investigate her presence in the park after hours. *Id.* Additionally, the encounter was lawful because the comment that the defendant made about having a warrant for her arrest "released," coupled with the officer's "recollection that he had seen [the] defendant's name on a warrant list," made it reasonable to suspect "that a warrant might still be outstanding for [the] defendant." *Id.* at 403.

Having concluded that the defendant had been law-fully stopped, we rejected her argument—based on this court's decision in *State v. Kirkeby*, 220 Or App 177, 185 P3d 510 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010)—that the officer had unlawfully expanded the stop or extended its duration. We explained:

> "The first problem with defendant's argument is that, other than certain appellate court decisions involving the application of ORS 810.410 to traffic stops (and not appli-cable to the present circumstances), *no authority supports the proposition that an officer cannot, during the course of a stop that is supported by reasonable suspicion or probable cause, inquire whether the stopped person is carrying weap-ons* or contraband. *See State v. Amaya*, 176 Or App 35, 44, 29 P3d 1177 (2001), *aff'd*, 336 Or 616, 89 P3d 1163 (2004) (questioning during a lawful stop on a matter unrelated to the basis for that stop does not require independent reason-able suspicion). The second problem with defendant's argu-ment is that the record does not support a determination that [the officer] extended the duration of the stop when he inquired about weapons and contraband and requested con-sent to search; rather, the record indicates that those events transpired before [the officer] received the commu-nication from dispatch concerning defendant's warrant status."

*Simcox*, 231 Or App at 403. (Emphasis added.) Accordingly, we concluded that, "regardless of when [the] defendant was stopped, the stop was lawful, and [the officer's] questions that led defendant to consent to a search were permissible." *Id*.

The same result obtains here. Humphreys's question regarding whether defendant had any weapons or "or any-thing that might cause me concern, that might poke or stick me" was asked during the course of a lawful stop. Accord-ingly, that question did not constitute an unlawful seizure of defendant. The trial court correctly denied defendant's motion to suppress.

Affirmed.