Submitted November 15, 2011, affirmed October 17, 2012, petition for review denied March 28, 2013 (353 Or 429)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHNNY SMITH,
*Defendant-Appellant.*

Klamath County Circuit Court
0702246CR; A143661

288 P3d 974

Peter Gartlan, Chief Defender, and Kali Montague, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Ryan Kahn, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Brewer, Judge, and Egan, Judge pro tempore.

SERCOMBE, P. J.

### SERCOMBE, P. J.

Defendant appeals a judgment of conviction for first-degree theft by receiving.[1] He assigns error to the trial court's denial of his motion for judgment of acquittal, arguing that the evidence was insufficient to establish that he knew or had good reason to know that the property in question was the subject of theft as required by ORS 164.095(1).[2] We conclude that the trial court did not err in denying the motion and, accordingly, affirm.

We set forth the facts in the light most favorable to the state and review those facts to determine whether a rational trier of fact could have found defendant guilty beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). Defendant is in the automotive repair and restoration business. In 2004, he agreed to perform extensive restoration work on a 1978 Corvette belonging to the victim. The parties did not agree on a fixed price for the work. Ultimately, the cost of parts and materials, labor, storage fees, and other expenses amounted to between $8,000 and $9,000. During the course of defendant's work on the Corvette, the victim made several miscellaneous payments to defendant, in addition to giving him several articles of personal property in trade. The parties had a history of trading personal property, and defendant had previously provided services to the victim in exchange for personal property. When defendant delivered the restored Corvette, the victim believed that he was "square" with defendant based on the incremental payments that he had made, the personal property that he had given to defendant in trade, and his perception that defendant's

---

[1] *See* ORS 164.015 (theft); ORS 164.095 (theft by receiving); ORS 164.055 (theft in the first degree). Defendant was convicted under the 2007 versions of those statutes, each of which has since been amended. Or Laws 2007, ch 71, § 47; Or Laws 2009, ch 811, § 9; Or Laws 2009, ch 16, § 3; Or Laws 2009, ch 610, § 6. Because those amendments are not relevant to our analysis, we refer to the current versions of ORS 164.015, ORS 164.095, and ORS 164.055.

[2] ORS 164.095(1) provides:

"A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another *knowing or having good reason to know that the property was the subject of theft.*"

(Emphasis added.)

work was deficient. Defendant, on the other hand, believed that the victim still owed him over $4,000.

On May 26, 2006, soon after defendant returned the Corvette, the victim was hospitalized after suffering a stroke. Defendant frequently visited the victim in the hospital and agreed to help the victim sell a number of his motor vehicles along with some of his personal property that was in storage at the time. The victim testified that all of the proceeds were to go to his wife. In addition, the victim spoke with defendant about bringing some of the personal property from storage to a garage sale that his wife was hosting. Still hospitalized, the victim ultimately signed a notarized statement giving defendant permission to sell the vehicles and to speak with particular finance companies on his behalf. Defendant subsequently gathered the vehicles— including the Corvette—and placed them in storage while attending to some of the victim's related affairs.

On July 8, 2006, defendant gained access to a storage unit at the victim's apartment complex and took possession of a used air compressor after telling the apartment manager that the air compressor belonged to him. Defendant further took possession, apparently from one or more different locations where the victim stored personal property, of a generator, a pressure washer, a set of rally wheels and accompanying hardware, and at least one other item belonging to the victim.

The victim was released from the hospital on July 17, 2006. Nearly one year later, the victim reported to the police that his property—specifically the Corvette, a set of four rally wheels and trim rings, a pressure washer, an air compressor, a generator, an acetylene torch set, and a battery charger— was missing. On June 12, 2007, Officer Rhodes spoke with defendant by telephone. Defendant asserted that the victim owed him $7,000[3] and confirmed that he was in possession

---

[3] Rhodes testified that defendant told him that the victim "owed him $7000 for the repairs on the [Corvette]"; however, the record indicates that a substantial portion of this rough figure consisted of expenses allegedly incurred attending to the victim's affairs while the victim was hospitalized. Defendant testified that the victim had asked him to "keep track of [defendant's] bill and money that [defendant] spent to help [the victim] out," and defendant in fact incurred expenses such as storage fees, finance charges, and the cost of fuel.

of the Corvette and the "other property that [the victim] had identified as missing[.]" Defendant admitted that he had not given any money to the victim's wife, nor had he brought anything to the victim's wife for inclusion in the garage sale.

Instead, defendant had installed the rally wheels on the Corvette (which he eventually sold at auction in a lien sale through the Department of Motor Vehicles) and had retained possession of the rest of the personal property to offset some of the remaining debt that the victim allegedly owed him. At the time of trial, defendant confirmed that he was still in possession of the pressure washer, air compressor, generator, and battery charger.

Defendant was charged with, among other things, theft by receiving property "such as a generator, air compressor, pressure washer, acetylene torch set, battery charger and/or rally wheels * * *." At trial, defendant moved for judgment of acquittal on that charge on the ground that the state had failed to prove that defendant took and possessed those items. The trial court, after further inquiry and an exchange of remarks with the prosecutor, denied the motion. The jury returned a verdict of guilty on the charge of theft by receiving.

On appeal, defendant argues that no rational trier of fact could have found beyond a reasonable doubt that he knew or believed that the items were the subject of theft given (1) his asserted claim to a valid interest in the items stemming from the debt allegedly owed to him by the victim, and (2) his history of trading services for property with the victim. He contends that neither his admission that he was in possession of the property in order to offset the alleged debt, nor his telephone conversation with Rhodes, provided sufficient evidence to support a conclusion that he knew that the property was stolen. Finally, defendant argues that the legislature did not intend that property disputes arising out of contractual or business relationships—in this case the vehicle-repair transaction—be subject to felony theft prosecutions.

In response, the state first contends that defendant's arguments are not preserved as required by ORAP 5.45(1).[4] The state then asserts that, even if the arguments are preserved, defendant's argument regarding legislative intent is without merit and the record contains sufficient evidence indicating that defendant knew that the property was the subject of theft. According to the state, the evidence shows that the property at issue was unrelated to the vehicle-repair transaction—having been entrusted by the victim to defendant only for sale to benefit the victim's wife. Consequently, the state argues, defendant retained[5] the property knowing that it was not lawfully his to keep and, in any event, continued to retain it even after Rhodes apprised him that the victim had reported it missing and that it was the subject of a police investigation. Although we conclude that defendant's argument as to knowledge was adequately preserved below, we otherwise agree with the state.[6]

The issue of the sufficiency of the record to present a jury question on defendant's knowledge was preserved. The state contends that, when moving for judgment of acquittal on the charge of theft by receiving, defendant raised only one argument: "that the state had not submitted evidence showing that the victim's property was actually in

---

[4] That rule provides, in part:

"No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court[,] * * * provided that the appellate court may consider an error of law apparent on the record."

[5] The state uses the term "concealed"; however, ORS 164.095 criminalizes both concealment and retention of property known to be the subject of theft, and both the facts and the substance of the state's arguments pertain more directly to retention.

[6] Defendant's contention that ORS 164.095 does not apply to property disputes arising out of contractual or business relationships is not supported by the text or context of the provision and warrants only brief discussion. Oregon criminal law contains numerous provisions that could apply, and have been applied, to conduct arising out of business relationships. *See, e.g., Kotera v. Daioh Int'l U.S.A. Corp.,* 179 Or App 253, 283, 40 P3d 506 (2002) (*prima facie* case of theft by receiving established by evidence that defendant unlawfully retained funds *in connection with a real estate transaction*); *State v. Stuart,* 250 Or 303, 442 P2d 231 (1968) (embezzlement of motor vehicle *by bailee*); ORS 165.095 (criminalizing, under the classification "business and commercial offenses," knowing misapplication or disposal of property originally *"entrusted to [a] person as a fiduciary"* (emphasis added)); *cf.* ORS 164.085 (theft by deception); ORS 164.125 (theft of services). Neither the text of ORS 164.095 nor the context supports the narrow ambit of the statute that is suggested by defendant.

defendant's possession." The state asserts that defendant "made no reference to a lack of evidence about defendant's knowledge, [or] the victim's history of trading equipment for defendant's labor[.]"

Defendant, in moving for judgment of acquittal, indeed failed to raise the argument that he now advances on appeal. Nevertheless, we find that defendant's contention regarding the knowledge requirement was preserved, as the trial court raised the issue *sua sponte*—in effect recharacterizing the issue and defendant's argument in order to address the theft by receiving charge more specifically—and the state responded at length before the trial court specifically *ruled* on that issue. After defendant initially moved for judgment of acquittal, the following colloquy took place:

"THE COURT: And count three [theft by receiving]?

"[DEFENSE COUNSEL]: Count three, it's the same thing. It's by receiving of the same items.

"THE COURT: [Prosecutor], a question. Isn't theft by receiving committed by receiving property known to be the subject of theft?

"[PROSECUTOR]: Or possessing it knowing it to be the subject of theft, Your Honor.

"THE COURT: Wouldn't there be an allegation that you know that it's the subject of theft?

"* * * * *

"THE COURT: Am I missing something in there? There's no allegation that [defendant] knew it was the subject of theft.

"* * * * *

"[PROSECUTOR]: Did unlawfully and knowingly commit theft by receiving. So knowingly committed theft by receiving. And receiving—the definition of—I think it's in the jury instruction as well.

"* * * * *

"THE COURT: [Prosecutor], your response to motion directed to count three?

"[PROSECUTOR]: Yes. In count three, I think Your Honor was concerned about knowing that the property was stolen and that you were in possession of it, that by receiving. Receiving is defined in jury instruction 1800(27), 'Receiving meaning acquiring possession, control, or title, or lending on the security of the property.' The allegation here is on the 12th day of June 2007, the same day that the officer called [defendant], he was told during that conversation, or became aware, that, one, the Vehicle's hot, and that [the victim] is alleging it was stolen, as well as the other items. At that point he is exercising control over items well over a year after they've been taken under the State's theory. And [he's] still holding onto them. That's the theft by receiving.

"And I had case law on that. *State v. Harleson*, 147 Or App 556, 1997 case, states that under the 1971 criminal code, 'One who commits the unlawful taking can also be convicted of theft by receiving for retaining or receiving the stolen property. Theft by receiving is a continuing offense and the statute of limitations does not begin to run until the last day on which the stolen property [was] retained or concealed.'

"So when [defendant] has the conversation with the officer, he talks about the car and the property that he still has it, it relates back to our [count] right here.

"* * * * *

"THE COURT: All right. [Prosecutor], as I understand it, the evidence supporting counts one and three, are statements made by the Defendant to [the victim] in a telephone conversation?

"[PROSECUTOR]: No, to Officer Rhodes.

"THE COURT: Officer Rhodes.

"[PROSECUTOR]: In addition to [the victim's] testimony about the arrangements he made in the hospital that this property was to be taken along with the vehicles and sold for the benefit of his wife.

"THE COURT: All right. Motions for judgment of acquittal are denied. There is some evidence in the record that would support a jury verdict for theft of the items of personal property other than the vehicle."

The preservation requirement is both prudential and pragmatic in nature, designed primarily to (1) apprise the trial court of a party's position such that it can consider and rule on it, (2) ensure fairness to the opposing party by avoiding surprise and allowing that party to address all issues raised, and (3) foster full development of the record. *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (noting additionally, regarding the rule's pragmatic basis, that "the touchstone in that regard, ultimately, is procedural *fairness to the parties* and to the trial court" (emphasis added)).

Here, with respect to preservation of the issue of whether defendant knew that the items at issue were the subject of theft, each purpose underlying the preservation requirement was met. The court raised, the state addressed, and the court ruled on the particular argument that the state now contends is unpreserved. The trial court was fully aware of the issue after raising it *sua sponte* and then considering the state's arguments in response. Importantly, the court denied defendant's motion for judgment of acquittal on the basis of the state's argument about the knowledge that defendant acquired from Rhodes—the issue that defendant now raises on appeal. As noted, the state had ample opportunity to address that issue and in fact did so by providing factual and legal analysis. Finally, given the court's and the parties' awareness of the precise issue that defendant articulates on appeal, there is no indication that development of the record was impaired because the court, rather than defendant, raised the issue of whether defendant had knowledge that the goods were stolen. *See State v. Spears*, 223 Or App 675, 680-81, 196 P3d 1037 (2008) (defendant's argument on appeal was preserved where trial court raised the issue *sua sponte* after defendant moved for judgment of acquittal). *Compare State v. Amador*, 230 Or App 1, 9-10 n 2, 213 P3d 846 (2009), *rev den*, 347 Or 533 (2010) (prosecutor's "passing reference" to argument not being made by the defendant is insufficient to preserve issue for appeal); *State v. Lamb*, 249 Or App 335, 340 n 4, 277 P3d 581 (2012) (trial court's "passing reference" to issue with no comment by the prosecutor or the defendant is insufficient for preservation). We therefore conclude, given

the circumstances of the court's ruling, that defendant's argument concerning the knowledge requirement in ORS 164.095 was adequately preserved and, accordingly, turn to the merits.

As noted, defendant argues that the evidence was insufficient to support a finding that he knew or had good reason to know that the items at issue were the subject of theft. "Theft" is defined by ORS 164.015, which provides:

> "A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:
>
> "(1)   Takes, appropriates, obtains or withholds such property from an owner thereof;
>
> "(2)   Commits theft of property lost, mislaid or delivered by mistake as provided in ORS 164.065;
>
> "(3)   Commits theft by extortion as provided in ORS 164.075;
>
> "(4)   Commits theft by deception as provided in ORS 164.085; or
>
> "(5)   *Commits theft by receiving as provided in ORS 164.095.*"

(Emphasis added.) In turn, ORS 164.095 provides, in relevant part:

> "(1)   A person commits theft by receiving if the person receives, *retains*, conceals or disposes of property of another *knowing or having good reason to know that the property was the subject of theft.*"

(Emphasis added.)

Notwithstanding the text of the statute, we have "construed ORS 164.095 as requiring a finding of defendant's *actual* knowledge or belief [that the property was the subject of theft] for conviction," a subjective intent, rather than the "good reason to know" reasonable-person standard. *State v. Thomas*, 13 Or App 164, 170-72, 509 P2d 446 (1973) (emphasis added); *State v. Korelis*, 273 Or 427, 429, 541 P2d 468 (1975) (approving *Thomas*'s construction of ORS 164.095); *see also State v. Ripka*, 111 Or App 469, 471, 827 P2d 189, *rev den*, 313 Or 300 (1992) (trial court properly instructed the jury "that it must find that defendant knew or

believed that the property was stolen, not that 'having good reason to know' would suffice"). Thus, in order to be found guilty of theft by receiving, defendant must have known or believed that the articles of personal property at issue were the subject of theft.

Although defendant claimed an interest in the property in order to offset the debt that he alleged the victim owed him, the evidence, viewed in the light most favorable to the state, indicates that the generator, pressure washer, air compressor, and battery charger were not directly connected to the vehicle-repair transaction. That is, contrary to defendant's argument that "the property was given to defendant in a manner consistent with his course of doing business with the victim[,]" the evidence is sufficient to support a finding that defendant was given access to the items only to sell them for the benefit of the victim's wife or to bring them to a specific garage sale.

Defendant did neither. Rather, the record permitted the jury to determine that defendant intentionally appropriated the items such that they became "the subject of theft" within the meaning of ORS 164.095. As set forth above, a "theft" is committed when, "with intent to deprive another of property or *to appropriate* property ***[,]" a person "[t]akes, *appropriates*, obtains or withholds such property from an owner thereof[.]" ORS 164.015 (emphasis added). Under ORS 164.005(1)(a), "appropriate" means to "[e]xercise control over property of another *** permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of such property[.]" Although he initially came into possession of the victim's property lawfully and for a specific purpose, in speaking with Rhodes on June 12, 2007, defendant was informed that the items at issue had been reported missing and were the subject of a police investigation. That evidence permitted the jury to determine that defendant became aware, as of June 12, 2007, at the latest, that the victim considered the items stolen and wished to regain possession of them. Thus, when defendant refused to return those items, he "appropriate[d]" them with intent to deprive the victim

of them or to deprive the victim of their value[7] insofar as he was retaining them indefinitely to offset the victim's alleged debt to him. Once the items were wrongfully appropriated, they became "the subject of theft."

Thus, the evidence supports jury determinations that: (1) defendant was given permission to possess the victim's property only in order to sell it and give the proceeds to the victim's wife or to bring it to the victim's wife's garage sale, and defendant did neither; (2) defendant appropriated the property for a different purpose—to satisfy an alleged debt; and (3) defendant continued to retain the property and deprive the victim of the property and its value despite the victim's efforts to recoup it with the aid of law enforcement. With those determinations, "the jury [could] draw reasonable inferences from the facts and circumstances of the case that the defendant either knew or believed that the property was stolen." *Korelis*, 273 Or at 429. Accordingly, we reject defendant's contention that his interaction with Rhodes—in combination with his own testimony and the circumstances described above—was insufficient to support a finding of actual knowledge that the items were the subject of theft. We therefore conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant knew that the property he retained was the subject of theft within the meaning of ORS 164.095. The trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.

---

[7] In *State v. Rocha*, 233 Or App 1, 7-8, 225 P3d 45 (2009), *rev den*, 348 Or 461 (2010), we held that a person need not intend to deprive another of certain property in and of itself to harbor the requisite intent to commit theft. Rather, a person must simply intend to deprive another of the *value* of the property. *Id.* at 8. Therefore, irrespective of whether the record supports a finding that defendant intended to deprive the victim of the air compressor, generator, pressure washer, battery charger, rally wheels, or acetylene torch set in particular, the requisite intent for theft was established by defendant's asserted intent to deprive the victim of the items until the alleged debt was paid—that is, until he had obtained their *value*.