Submitted October 16, 2013, reversed and remanded April 23, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRUCE RONALD PEARSON,
*Defendant-Appellant.*

Tillamook County Circuit Court
116105; A150179

323 P3d 994

Peter Gartlan, Chief Defender, and Kali Montague, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for unlawful possession of a firearm, ORS 166.250. He assigns error to the trial court's denial of his motion to suppress evidence of a firearm found in his car during a traffic stop. He argues that the officer discovered the evidence after unlawfully extending the traffic stop in violation of Article I, section 9, of the Oregon Constitution. We conclude that the officer unlawfully extended the traffic stop when he asked defendant about weapons without reasonable suspicion of criminal activity or concern for his personal safety and, therefore, the evidence of the firearm should have been suppressed. Accordingly, we reverse and remand.

We review the trial court's denial of a motion to suppress for errors of law, and defer to the trial court's findings of historical fact when there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993); *State v. Gomes*, 236 Or App 364, 370, 236 P3d 841 (2010).

In the middle of the afternoon, Trooper Hall, of the Oregon State Police, stopped defendant for speeding. When he approached defendant's window, he "noticed what appeared to be a box of ammunition sitting on the passenger side seat that was partially covered by some clothing * * *." He immediately became concerned for his safety and "wanted to know where the firearm associated with the ammunition would be," so he asked defendant "Where is the weapon?" Defendant replied, "What weapon?" Hall started to tell defendant that he had seen the box of ammunition when he "realized it was not a box of ammunition but a box of cigarettes * * *." At trial, Hall explained that the only indication that he had that there might be a firearm in the car was the box that he thought contained ammunition. However, he stated that because the question that he had asked defendant "had never been answered" he "asked again where is the weapon[?]" In response, defendant made a motion indicating that there was a weapon under the armrest. Upon request, defendant consented to a search. Hall discovered a handgun concealed in the armrest, which defendant possessed without a concealed handgun license.

After being charged with unlawful possession of a firearm, defendant moved to suppress evidence obtained as a result of the search. Defendant argued that once Hall realized that the box was not ammunition, he had no reason to believe that defendant had a weapon. It follows, he contended, that Hall unlawfully extended the stop when he asked about the weapon a second time. The trial court denied that motion, concluding that "asking about the presence of weapons in the vehicle was not an illegal expansion of the stop and that defendant was not unlawfully detained." Ultimately, defendant waived his right to a jury trial and the trial court found him guilty.

On appeal, defendant assigns error to the trial court's denial of his motion to suppress, raising the same argument that he made below—that Hall did not have reason to suspect that defendant was armed or dangerous once he realized that what he thought was ammunition was actually a carton of cigarettes. The state concedes that Hall's second question about a weapon extended the stop. Nonetheless, the state argues, that the extension was lawful because it was justified by "legitimate officer-safety concerns" that were raised when defendant gave an ambiguous and evasive response to the first inquiry—"What weapon?" Defendant does not dispute the legitimacy of Hall's first question about weapons or the initial traffic stop.

Because in this case, there is no question about whether the initial traffic stop was justified, the sole issue is whether Hall unlawfully extended the stop when he asked defendant about a weapon for a second time. During a traffic stop an officer may inquire about issues related to that stop; however, police inquiries unrelated to the traffic violation may violate Article I, section 9, of the Oregon Constitution by unlawfully extending the duration of the stop. *State v. Rodgers*, 219 Or App 366, 372, 182 P3d 209 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010). There are two situations in which an officer may lawfully extend a stop. First, an officer may inquire about matters unrelated to the stop when the officer has reasonable suspicion that the person has engaged in criminal activity. *Id.* Second, an officer may take reasonable steps—including asking about weapons—to protect herself or others if she

"develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987).

In this case, we conclude that Hall's extension of the stop was unlawful because he lacked reasonable suspicion that defendant had engaged in other criminal activity or that defendant was a threat to his safety. Even assuming that the presence of a box of ammunition would have created reasonable suspicion of criminal activity or officer-safety concerns to justify Hall's initial inquiry about weapons, any such suspicion or concern dissipated as soon as Hall realized that the box which he had thought carried ammunition was actually a carton of cigarettes. Thus, when Hall asked about the weapon a second time, he unlawfully extended the stop.

We do not agree with the state that defendant's response—"What weapon?"—justified a reasonable suspicion that defendant posed an immediate threat to Hall and therefore created an officer-safety concern. The officer-safety exception requires reasonable suspicion, based on *specific and articulable facts*, that the defendant might pose an immediate threat of serious physical injury to the officer. Defendant's answer to Hall's potentially confusing question, without any other indicia of a threat to Hall's safety, could not provide the reasonable suspicion that the officer-safety exception requires. By asking defendant where *the* weapon was, Hall implied that he knew there was a weapon in defendant's car. Defendant, who could not have been aware that Hall had mistaken his carton of cigarettes for a box of ammunition, reasonably could have been confused by Hall's inquiry about a weapon which defendant knew was out of Hall's sight. Accordingly, defendant's response—"What weapon?"—was a logical reply to a confusing inquiry, as there was no indication that Hall could have known that defendant had a weapon in his car. Viewing defendant's response in the context of a traffic stop for speeding, it was not an indication of the nearby presence of a weapon and, therefore, it was not a justification for a concern about officer safety.

We conclude that the trial court erred in denying defendant's motion to suppress evidence.

Reversed and remanded.