Submitted December 30, 2013, reversed and remanded May 21, petition for
review allowed December 11, 2014 (356 Or 574)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**VICTOR JAVIER PICHARDO,**
*Defendant-Appellant.*

Multnomah County Circuit Court
110833156; A150488

326 P3d 624

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Wollheim, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.

HASELTON, C. J.

**HASELTON, C. J.**

Defendant, who entered a conditional plea of no contest, ORS 135.335(3),[1] for possession of heroin, ORS 475.854, appeals the resulting judgment, assigning error to the trial court's denial of his motion to suppress evidence. For the reasons amplified below, we conclude that the arresting officer unlawfully extended the duration of the stop in violation of Article I, section 9, of the Oregon Constitution[2] when he asked defendant about drugs without reasonable suspicion of criminal drug activity, and that the evidence that defendant seeks to suppress was the unattenuated product of that illegality. Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress, and we reverse and remand.

We review the trial court's denial of defendant's motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In doing so, we are bound by the trial court's express and implicit factual findings if there is constitutionally sufficient evidence in the record to support them. *Id.* We state the facts in accordance with that standard.

On August 2, 2011, Gresham Police Officer Long and his partner were dispatched to assist other officers who were looking for a wanted person, Hamilton, who had fled police officers on foot after they attempted to execute an arrest warrant. Long was not informed about the basis of that warrant. While driving in the neighborhood in which Hamilton had last been seen, Long and his partner saw defendant's car stopped and idling in a traffic lane. There were no other vehicles traveling on that street. Long believed that defendant was impeding traffic in violation of

---

[1] ORS 135.335(3) provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

[2] Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

ORS 811.130.[3] As Long watched defendant's car, a man who matched Hamilton's description ran to the car, opened the front passenger door, jumped in, and leaned the seat back. At that point, Long was "concerned" that defendant was helping Hamilton evade the police.

Long and his partner drove toward the front of defendant's car, activated the overhead lights on their patrol car, and parked in front of defendant's car. Another police car with its overhead lights on pulled behind defendant's car. While other officers arrested the front-seat passenger (who, indeed, was Hamilton), Long approached the driver's side window and asked defendant to step out of the car. Defendant complied. Long asked defendant for his driver's license and proof of insurance, and defendant responded that he had insurance but no driver's license.

Long then asked defendant for consent to search him for drugs. Defendant consented and admitted that he had heroin in his pocket, which Long located and seized. Long arrested defendant, placed him in handcuffs, advised him of his *Miranda* rights, and placed him in the back seat of a patrol car. Long then asked defendant for consent to search his car. Defendant consented, and admitted that there were drugs in the car, which Long located and seized.

Defendant was charged with possession of heroin. Defendant filed a pretrial motion, arguing that the stop and search violated Article I, section 9, and, therefore, the court should suppress "all evidence obtained as a result of an unlawful stop, including the seizure of any controlled substances and all oral derivative evidence." Specifically, defendant argued that the initial stop was not supported by probable cause that defendant had parked his car "in a manner that impedes or blocks the normal and reasonable movement of traffic." ORS 811.130(1). Defendant further argued that, even if the initial stop was lawful, Long unlawfully extended the scope and duration of the stop by asking about drugs without reasonable suspicion that defendant was engaged in criminal drug activity.

---

[3] ORS 811.130 provides, in part, "A person commits the offense of impeding traffic if the person drives a motor vehicle or a combination of motor vehicles in a manner that impedes or blocks the normal and reasonable movement of traffic."

The trial court denied defendant's motion, reasoning, with little elaboration, that "the duration and scope of the stop was all reasonable on the record." Defendant entered a conditional guilty plea and appealed, assigning error to the denial of his motion to suppress and reprising his arguments before the trial court.

On appeal, the state remonstrates that Long lawfully stopped defendant based on objectively reasonable suspicion that defendant was attempting to help Hamilton evade the police. *See* ORS 162.325 (crime of hindering prosecution); ORS 162.247 (crime of interfering with a peace officer). The state contends that, because defendant was lawfully detained based on objectively reasonable suspicion of criminal activity, defendant's remaining arguments concerning the duration and scope of the stop must fail. Finally, the state argues that, even if the stop was unlawful—either at the outset or by way of extension—defendant is not entitled to suppression because defendant's consent to search his person and his vehicle was attenuated from any preceding illegality.

We first consider whether the initial stop was supported by reasonable suspicion. *State v. Rodgers/Kirkeby*, 347 Or 610, 621, 227 P3d 695 (2010) ("[A] temporary restraint of a person's liberty for the purpose of criminal investigation— *i.e.*, a 'stop'—qualifies as a 'seizure,' under Article I, section 9, and must be justified by a reasonable suspicion of criminal activity."). "If a police officer is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime, the officer has 'reasonable suspicion' and hence may stop the person for investigation." *Ehly*, 317 Or at 80. "Reasonable suspicion has two components: the officer must subjectively believe that the person is engaged in criminal activity, and that belief must be objectively reasonable." *State v. Espinoza-Barragan*, 253 Or App 743, 747, 293 P3d 1072 (2012).

Applying those principles to this case, we conclude that the initial stop was lawful. When Long approached defendant, Long subjectively believed that he had lawful authority to stop defendant based on a traffic violation. Additionally, based on the facts adduced at trial, we

conclude that an objectively reasonable officer in Long's position would have suspected that defendant was attempting to help Hamilton evade the police. *See State v. Miller*, 345 Or 176, 186, 191 P3d 651 (2008) (explaining that an officer's expressed reason for making a stop does not control a court's determination of the legality of that stop). Accordingly, Long had reasonable suspicion to stop defendant to inquire about defendant's interactions with Hamilton and to gather information necessary to issue a traffic citation. Additionally, after Long discovered that defendant was driving without a driver's license, Long had probable cause to investigate circumstances surrounding that possible violation.

We next consider whether Long unlawfully extended the stop. A police officer does not necessarily violate Article I, section 9, by asking questions unrelated to the original reason for a stop. That is so because "verbal inquiries are not searches and seizures." *Rodgers/Kirkeby*, 347 Or at 622; *see also State v. Amaya*, 336 Or 616, 626, 89 P3d 1163 (2004) (rejecting the defendant's argument that "*every* question by an officer that is unrelated to the reason for a valid traffic stop violates Article I, section 9, unless the question is based on reasonable suspicion" (emphasis in original)); *State v. Gomes*, 236 Or App 364, 371, 236 P3d 841 (2010) ("[T]here are no Article I, section 9, implications if an inquiry unrelated to the traffic stop occurs during a routine stop but does not delay it."). Nevertheless, in at least two situations, questioning unrelated to the original reason for a stop may lead to unlawful prolongation of the duration of the stop. As we explained in *State v. Huggett*, 228 Or App 569, 574, 209 P3d 385 (2009), *rev dismissed*, 348 Or 71 (2010) (citations omitted):

> "In the first situation, an officer concludes a lawful stop (for example, by telling a person that he or she is free to leave) and then initiates a second stop by questioning the person about unrelated matters without reasonable suspicion of further criminal activity. In the second situation, an officer, without letting the person know expressly or by implication that he or she is free to leave, detains the person beyond the time reasonably required to investigate the initial basis for the stop and to issue a citation, without the requisite reasonable suspicion. In either case, the extension of a lawful stop is unlawful unless it is supported by reasonable suspicion of criminal activity."

*See also State v. Jimenez*, 263 Or App 150, 156-57, 326 P3d 1222 (2014) (officer unlawfully extended the duration of a traffic stop by inquiring about weapons without reasonable suspicion that the defendant possessed a weapon or otherwise presented a safety threat); *State v. Pearson*, 262 Or App 368, 371, 323 P3d 994 (2014) (same); *State v. Maciel*, 254 Or App 530, 536, 295 P3d 145 (2013) (officer unlawfully extended duration of stop when the officer shifted from investigating whether the vehicle was stolen to whether the defendant was engaged in drug trafficking); *State v. Kentopp*, 251 Or App 527, 534, 284 P3d 564 (2012) ("[A]n officer's reasonable suspicion about certain crimes *does not justify* the officer's extension of a stop to conduct an investigation of another crime for which the officer does not also have reasonable suspicion." (Emphasis in original.)).

We conclude that Long unlawfully extended the duration of the stop by asking defendant for consent to search for drugs.[4] On that issue, *State v. Klein*, 234 Or App 523, 228 P3d 714 (2010), is particularly instructive and, indeed, dispositive.

In *Klein*, a police officer stopped the defendant for committing traffic violations on his bicycle. The officer obtained the defendant's identification, ran a records check, and discovered that the defendant was on supervision for a prior burglary conviction. The officer returned to the defendant and noticed a key ring with numerous keys hanging from the defendant's bicycle. The officer believed that the defendant might be in possession of burglary tools in violation of ORS 164.235. However, rather than asking about the keys, the officer asked whether the defendant had any drugs

---

[4] We note that Long's question regarding drugs did not occur during an "unavoidable lull." *See State v. Rodgers*, 219 Or App 366, 372, 182 P3d 209 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010):

"[A]lthough an officer is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, such as while awaiting the results of a records check, that officer is not similarly free to question the motorist about unrelated matters as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation. When an officer has all of the information necessary to issue a citation but instead delays in processing it or in telling the motorist that he or she is free to go, the stop is no longer lawful unless the officer has reasonable suspicion of further criminal activity."

on him. The defendant initially denied possessing drugs and refused to consent to a search. The officer inquired about the keys and then, again, asked the defendant whether he was carrying drugs. The defendant then admitted that he possessed controlled substances and consented to a search. The officer found drugs in the defendant's pockets and cited him for possession of controlled substances. 234 Or App at 526-27. The trial court denied the defendant's suppression motion, and he was convicted of possession of a controlled substance on stipulated facts. *Id.* at 528.

On appeal, we explained that the initial traffic stop was lawful and that, after observing the key ring, the officer had a reasonable suspicion that the defendant possessed burglary tools. That suspicion permitted the officer to inquire about the keys. Nevertheless, because the officer's drug-related questions were not supported by reasonable suspicion, the officer's inquiry about drugs "unconstitutionally extended the duration of the stop as to either the traffic offense or unlawful possession of burglary tools." *Id.* at 532. We also concluded that the defendant's consent to the search was a product of the illegal extension of the stop and, thus, the evidence obtained from the search must be suppressed. *Id.*

Application of those principles here is straightforward. As we previously explained, Long had reasonable suspicion to stop defendant to inquire about defendant's interactions with Hamilton and to gather information necessary to issue a traffic citation. Additionally, after Long discovered that defendant was driving without a driver's license, Long had probable cause to investigate circumstances surrounding that possible violation. However, Long followed none of those constitutionally permissible paths of inquiry and action. Instead, Long immediately asked defendant whether he was carrying drugs and whether he would consent to a search. The state does not point to any "articulable facts" that gave rise to reasonable suspicion of drug activity. *Ehly,* 317 Or at 80. As in *Klein,* Long's inquiry about drugs unconstitutionally extended the duration of the stop.

A court must exclude evidence obtained "as a result of a violation of the defendant's rights under Article I, section 9."

*State v. Hall*, 339 Or 7, 24, 115 P3d 908 (2005). As pertinent here, the court in *Hall* explained an exception to that general exclusionary rule:

> "[A]fter a defendant establishes the existence of a minimal factual nexus—that is, at minimum, the existence of a 'but for' relationship—between the evidence sought to be suppressed and prior unlawful police conduct, the state nevertheless may establish that the disputed evidence is admissible * * *, by proving that * * * the preceding violation of the defendant's rights under Article I, section 9, has such a tenuous factual link to the disputed evidence that that unlawful police conduct cannot be viewed properly as the source of that evidence[.]"

*Id.* at 25 (citations omitted).[5]

Contrary to the state's assertion, defendant's consent was not independent of or attenuated from police misconduct. As explained, Long's request to search defendant for drugs constituted an unlawful extension of the stop, and defendant's consent and admission was directly responsive to Long's impermissible inquiry. Thus, the unlawful extension of the stop can "be viewed properly as the source of" defendant's consent and admissions and physical evidence of possession of heroin. *Id.* Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

---

[5] The state, while acknowledging that "the test as articulated in *Hall* controls this court's analysis," argues that we should abandon that test. The state is correct in that we are bound by *Hall*.