Submitted on remand from the Oregon Supreme Court February 24, reversed
and remanded December 2, 2015, petition for review allowed April 21, 2016
(359 Or 166)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VICTOR JAVIER PICHARDO,
*Defendant-Appellant.*

Multnomah County Circuit Court
110833156; A150488

362 P3d 1

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant. On the supplemental brief were Jedediah Peterson and O'Connor Weber LLP.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the answering brief for respondent. On the supplemental brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Rolf C. Moan, Assistant Attorney General.

Before Flynn, Presiding Judge, and Haselton, Chief Judge, and Wollheim, Senior Judge.

HASELTON, C. J.

## HASELTON, C. J.

This case is before us for a second time. Previously, we reversed and remanded defendant's conviction for possession of heroin, concluding that the trial court had erred in denying defendant's motion to suppress evidence that derived from an unlawful seizure. *State v. Pichardo*, 263 Or App 1, 326 P3d 624, *vac'd and rem'd*, 356 Or 574, 342 P3d 87 (2014) *(Pichardo I)*. The Supreme Court vacated our decision and remanded for reconsideration in light of its intervening decisions in *State v. Unger*, 356 Or 59, 333 P3d 1009 (2014), and its companion cases, *State v. Musser*, 356 Or 148, 335 P3d 814 (2014), and *State v. Lorenzo*, 356 Or 134, 335 P3d 821 (2014), which modified the analytical framework for deciding whether a person's voluntary consent to a search derived from a preceding police illegality. As explained below, we conclude, under the modified framework, that the state failed to demonstrate that defendant's consent to search was not the product of police exploitation of the unlawful seizure. Accordingly, we adhere to our prior decision, and reverse and remand.

We begin by reiterating the recitation of material facts from *Pichardo I*:

"On August 2, 2011, Gresham Police Officer Long and his partner were dispatched to assist other officers who were looking for a wanted person, Hamilton, who had fled police officers on foot after they attempted to execute an arrest warrant. Long was not informed about the basis of that warrant. While driving in the neighborhood in which Hamilton had last been seen, Long and his partner saw defendant's car stopped and idling in a traffic lane. There were no other vehicles traveling on that street. Long believed that defendant was impeding traffic in violation of ORS 811.130. As Long watched defendant's car, a man who matched Hamilton's description ran to the car, opened the front passenger door, jumped in, and leaned the seat back. At that point, Long was 'concerned' that defendant was helping Hamilton evade the police.

"Long and his partner drove toward the front of defendant's car, activated the overhead lights on their patrol car, and parked in front of defendant's car. Another police car with its overhead lights on pulled behind defendant's

car. While other officers arrested the front-seat passenger (who, indeed, was Hamilton), Long approached the driver's side window and asked defendant to step out of the car. Defendant complied. Long asked defendant for his driver's license and proof of insurance, and defendant responded that he had insurance but no driver's license.

"Long then asked defendant for consent to search him for drugs. Defendant consented and admitted that he had heroin in his pocket, which Long located and seized. Long arrested defendant, placed him in handcuffs, advised him of his *Miranda* rights, and placed him in the back seat of a patrol car. Long then asked defendant for consent to search his car. Defendant consented, and admitted that there were drugs in the car, which Long located and seized.

"Defendant was charged with possession of heroin. Defendant filed a pretrial motion, arguing that the stop and search violated Article I, section 9, [of the Oregon Constitution] and, therefore, the court should suppress 'all evidence obtained as a result of an unlawful stop, including the seizure of any controlled substances and all oral derivative evidence.' Specifically, defendant argued that the initial stop was not supported by probable cause that defendant had parked his car 'in a manner that impedes or blocks the normal and reasonable movement of traffic.' ORS 811.130(1). Defendant further argued that, even if the initial stop was lawful, Long unlawfully extended the scope and duration of the stop by asking about drugs without reasonable suspicion that defendant was engaged in criminal drug activity.

"The trial court denied defendant's motion, reasoning, with little elaboration, that 'the duration and scope of the stop was all reasonable on the record.' Defendant entered a conditional guilty plea and appealed, assigning error to the denial of his motion to suppress and reprising his arguments before the trial court."

*Pichardo I*, 263 Or App at 2-4 (footnote omitted).

On appeal in *Pichardo I*, the parties disputed the lawfulness of the initial stop, whether the stop was unlawfully extended, and whether defendant's consent was sufficiently attenuated from any police misconduct, under the analysis set forth in *State v. Hall*, 339 Or 7, 24, 115 P3d 908 (2005).

We ultimately resolved the first issue in the state's favor and the latter two issues in favor of defendant. As to the first issue, we concluded that the initial stop of defendant's vehicle was lawful because Long had reasonable suspicion to stop defendant to inquire about his interactions with Hamilton and to gather information necessary to issue a traffic citation. In addition, Long developed probable cause to investigate defendant for driving without a license. *Pichardo I*, 263 Or App at 5. However, we concluded that "Long's inquiry about drugs unconstitutionally extended the duration of the stop," constituting an unlawful seizure under Article I, section 9. *Id.* at 7. We explained that Long had departed from the "constitutionally permissible paths of inquiry and action" by "immediately"—and without the coincidence of an "unavoidable lull"—"ask[ing] defendant whether he was carrying drugs and whether he would consent to a search" without reasonable suspicion of drug activity. *Id.*

We further concluded that, under *Hall*, defendant was entitled to exclusion of the evidence that derived from Long's request to search for drugs:

> "Contrary to the state's assertion, defendant's consent was not independent of or attenuated from police misconduct. As explained, Long's request to search defendant for drugs constituted an unlawful extension of the stop, and defendant's consent and admission was directly responsive to Long's impermissible inquiry. Thus, the unlawful extension of the stop can 'be viewed properly as the source of' defendant's consent and admissions and physical evidence of possession of heroin. [*Hall*, 339 Or at 25]. Accordingly, the trial court erred in denying defendant's motion to suppress."

*Pichardo I*, 263 Or App at 8.

The Supreme Court subsequently issued *Unger, Musser, and Lorenzo*, which modified *Hall*'s analysis. As pertinent to our consideration here, the court explained that, when a defendant seeks to suppress evidence discovered during a consent search that followed unlawful police conduct, "the state bears the burden of demonstrating that (1) the consent was voluntary; and (2) the consent was not

the product of police exploitation of the illegal stop or search." *Unger*, 356 Or at 74-75.

Where, as here, there is no question that the defendant's consent was voluntary, we examine "the totality of the circumstances to determine whether the state had carried its burden of proving that the consent was independent of, or only tenuously related to, the unlawful police conduct." *Id.* at 86 (adhering to *Hall* in that respect). In other words, we must determine "whether police 'exploited' or 'took advantage of' or 'traded on' their unlawful conduct to obtain consent, or—examined from the perspective of the consent—whether the consent was 'tainted' because it was 'derived from' or was a 'product of' the unlawful conduct." *Id.* at 80. Factors relevant to that fact-intensive analysis include

> "the temporal proximity of the unlawful police conduct and the defendant's consent, whether any intervening or mitigating circumstances exist (like officers having advised the defendant of the right to refuse consent), whether officers 'traded on' information obtained during an illegal search or seizure in subsequently gaining consent to search further, the intrusiveness or severity of the police misconduct, whether the police misconduct was flagrant, and the nature of the police officers' purpose in engaging in the unlawful conduct."

*State v. Kelly*, 274 Or App 363, 377, 360 P3d 691 (2015) (quoting *Unger*, 356 Or at 80-83).

Our only task on remand is to apply that framework to the circumstances in this case. With respect to that narrowly circumscribed issue, defendant emphasizes the temporal proximity and direct causal link between the unlawful extension of the stop—which was effectuated by the request for defendant's consent to search his person for drugs—and led to defendant's consent to search and his inculpatory admission. Defendant also emphasizes the lack of intervening or mitigating circumstances, noting that he was under arrest by the time *Miranda* warnings were given, and had at no point been given a choice to remain in the car or refuse consent to a search. In addition, the defense stresses that the motivating purpose for the misconduct was clearly to facilitate a consent search for drugs.

The state responds by focusing its arguments on other considerations, particularly the nature and relatively low "flagrancy" of the police misconduct. Although it does not dispute the causal link between the unlawful conduct and defendant's consent to search, the state maintains that that conduct, a "low-key and unremarkable" request for consent, "did not significantly affect defendant's *decision* whether to consent." (Emphasis in original.)

On the record here, we conclude that the state did not meet its burden of demonstrating that defendant's consent to the search was not the product of police exploitation of the misconduct.

In this case, the temporal proximity between the police misconduct and defendant's consent was immediate. Long obtained defendant's consent in direct response to the inquiry that effectuated the unlawful seizure. Further, as defendant emphasizes, no intervening or mitigating circumstance cut off the immediate temporal and direct causal link between those events. The police did not advise defendant that he had the right to refuse consent to the search of his person, and *Miranda* warnings were not given until after he was arrested. Those considerations, though not dispositive, suggest that defendant's consent was the product of the unlawful conduct that immediately preceded it. *Cf. Musser*, 356 Or at 158 (observing that "there was not simply 'but for' causation—unlawful police conduct and then a request for consent"—where the unlawful police conduct "led directly" to the events ultimately resulting in the consent to search).

Other considerations may arguably weigh in favor of the state, or could be viewed as neutral. Defendant was originally stopped for lawful purposes, and the police had probable cause to detain him on other matters. *Pichardo I*, 263 Or App at 4-5. Nothing in the record suggests the police engaged in threatening behavior towards defendant; they did not point their weapons at him or make promises or threats to induce his consent to the search. Rather, they simply requested consent to search his person for drugs. Nevertheless, the police misconduct in this case was at least moderately flagrant in that the prohibition against extending stops by way of gratuitous investigatory inquiries had

been well established as of the time of this stop, *see State v. Rodgers*, 219 Or App 366, 182 P3d 209 (2008), and *State v. Kirkeby*, 220 Or App 177, 185 P3d 510 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010). Thus, a reasonable officer would have appreciated that that inquiry was prohibited. Further, the degree of intrusion was moderate in that it effected an illegal seizure.

Ultimately, given the totality of the other circumstantial considerations—and, especially, temporal proximity and the absence of any intervening or mitigating circumstances—the purpose of the operative police misconduct here is decisive. Procuring defendant's consent to an exploratory search for drugs and obtaining drug-related evidence was, necessarily, the purpose and intended consequence of the police misconduct in this case—and, as we previously determined, defendant's subsequent consent and inculpatory admission was indeed "directly responsive" to that impermissible inquiry. *Pichardo I*, 263 Or App at 8.

Our analysis in *State v. Young* demonstrates that where, as here, the purpose of the police misconduct was to obtain the evidence at issue, that consideration, combined with "almost immediate" temporal proximity and a lack of intervening or mitigating circumstances, can be determinative. 268 Or App 688, 695, 343 P3d 277 (2015). In *Young*, police unlawfully seized a backpack during the course of an otherwise lawful seizure of the defendant and three other occupants of a disabled car stopped in "the middle of a busy street" near midnight on New Year's Eve. *Id.* at 689-91. After ordering the driver and three passengers, including the defendant, to exit the vehicle, an officer, Monico, "removed the backpack from the car, placed it on the trunk, and asked if anyone wanted 'to claim' the backpack and if he could search it." *Id.* at 690. The driver and front-seat passenger denied ownership; subsequently the other back-seat passenger, Birdsong, admitted that the backpack contained marijuana belonging to him and the defendant, who had also been in the back seat. Monico then asked if he could search the backpack. The defendant and Birdsong consented. The resulting search revealed that the backpack contained 12 bags of marijuana totaling 37.82 grams. The defendant

subsequently made incriminating statements, and was later charged with various marijuana-related crimes. *Id.*

At trial, the defendant unsuccessfully moved to suppress the backpack and its contents and other evidence resulting from its seizure. On appeal, we concluded that the seizure of the backpack was unlawful, and, as pertinent here, conducted an *Unger* exploitation analysis. In particular, we concluded that the combination of temporal proximity, the lack of intervening or mitigating circumstances, and the purpose of the police misconduct, demonstrated that the state did not meet its burden to prove that the defendant's consent was not the product of police exploitation of the unlawful conduct:

> "Here, the temporal proximity between Monico's seizure of the backpack and defendant's consent to search it was almost immediate. *Monico requested consent to search the very object that he had just seized*, further supporting the conclusion that Monico exploited that seizure to obtain defendant's consent \* \* \*. In addition, the record indicates that just prior to seizing the backpack, Monico had smelled marijuana, searched the car, asked defendant and the other passengers where the marijuana was located, and said that he 'wanted it.' After he seized the backpack, Monico asked who wanted to 'claim' it. Together, these facts show that Monico acted forcefully to assert his control over defendant, the other passengers, and the property seized, and further support a conclusion that *his 'purpose' in seizing the backpack was directly to facilitate a search*. Indeed, it is difficult to conceive of any other reason for Monico's removal of the backpack from the car."

*Id.* at 695-96 (emphases added). After additionally observing that no mitigating or intervening circumstances occurred that could possibly have attenuated the defendant's consent from the seizure of the backpack, we ultimately concluded that the state had failed to demonstrate attenuation. *Id.* at 696.

Here, as in *Young*, we cannot conceive of any other possible motivation for, or intended consequence of, such a straightforward request for consent to search for drugs, and the state does not offer one. That consideration therefore increases the likelihood that defendant's consent, although

voluntary, was nonetheless directly derivative of the misconduct. *See State v. Benning*, 273 Or App 183, 202, 359 P3d 357 (2015) (determining that "purpose" consideration weighs in favor of suppression if the purpose of the misconduct was to enable an investigatory "shot in the dark"); *cf. State v. Barnthouse*, 271 Or App 312, 344, 350 P3d 536 (2015) ("[T]ainted 'purpose' suggests that the defendant's consent, even if voluntary, is also tainted.").

Thus, consistently with *Young*, under these circumstances, our determination that the patent "purpose" of the misconduct was "directly to facilitate a search" for the evidence at issue, 268 Or App at 695-96, paired with immediate temporal proximity and the absence of any intervening or mitigating circumstance, lead us to conclude that the state failed to prove that defendant's consent was not "the product of police exploitation of the illegal stop or search," *Unger*, 356 Or at 74-75. *See State v. Bonilla*, 267 Or App 337, 347, 341 P3d 751 (2014), *rev allowed on other grounds*, 357 Or 143 (2015) (where an immediate temporal and direct causal connection existed, observing that "it is patent that defendant's * * * concurrently elicited consent [was] the unattenuated product[] of the unlawful search and discovery of the methamphetamine"). We therefore adhere to our previous conclusion that the trial court erred in denying defendant's motion to suppress.[1]

---

[1] The circumstances in this case are dissimilar in several pertinent respects to those in *Unger* and *Lorenzo*, two cases in which the Supreme Court concluded that the defendants' consent was sufficiently attenuated from the police misconduct.

The police misconduct in *Unger* was less severe than the misconduct at issue here. There, detectives—following up on a report that young children at the defendant's house "had access to drugs and guns"—searched the defendant's property without probable cause by entering the defendant's backyard to knock on the back door after no one answered the front door. 356 Or at 62. Here, unlike in *Unger*, the extension of the stop to conduct a drug investigation unsupported by reasonable suspicion was essentially a "fishing expedition for incriminating evidence," a circumstance suggesting "tainted 'purpose,'" which, in turn, "suggests that the defendant's consent, even if voluntary, also may be tainted." *Id.* at 91.

In *Lorenzo*, the predicate illegality consisted of an officer reaching into the defendant's apartment to knock on his bedroom door, with the purpose of contacting him "because he was the roommate of a person who had just attempted to commit suicide and the officer was [reasonably] concerned about [the] defendant's safety." 356 Or at 145. There, unlike here, "[t]here was no suggestion that the officer was pursuing a drug or other criminal investigation." *Id.*

Reversed and remanded.

---

We observe, further, that defendant's consent to the search here was not spontaneously "volunteered." Rather, it was elicited by the request to search, which effectuated an unlawful extension of the stop. *Cf. State v. Delong*, 357 Or 365, 374-76, 350 P3d 433 (2015) (in the separate, but related, context of an Article I, section 12, violation, holding that the defendant's invitation to search his vehicle was sufficient to attenuate the taint arising from a prior *Miranda* violation).