754　　　　　January 20, 2017　　　　　No. 1

# IN THE SUPREME COURT OF THE
# STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

VICTOR JAVIER PICHARDO,
*Respondent on Review.*

(CC 110833156; CA A150488; SC S063885)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 22, 2016.

Leigh A. Salmon, Assistant Attorney General, Salem, argued and the cause and filed the brief for petitioner on review. Also on the brief were Ellen F. Rosenblum Attorney General, and Benjamin Gutman, Solicitor General.

Jed Peterson, O'Connor Weber LLC, Portland, argued the cause and filed the brief for respondent on review.

KISTLER, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____
 * Appeal from the Multnomah County Circuit Court, Christopher J. Marshall, Judge. 275 Or App 49, 364 P3d 1 (2015)

**KISTLER, J.**

An officer stopped defendant to investigate whether he was helping another person evade the police. During the stop, the officer asked defendant for consent to a search for drugs. The primary question in this case is whether the officer's request for consent was reasonably related to the reason for the stop and thus did not extend it in violation of Article I, section 9, of the Oregon Constitution. The trial court ruled that the officer's request for consent did not unreasonably extend the stop. The Court of Appeals reversed. It held that an unrelated request for consent extended the stop in violation of Article I, section 9, and that defendant's consent had not attenuated that illegality. *State v. Pichardo*, 263 Or App 1, 326 P3d 624 (2014). We allowed the state's petition for review, vacated the Court of Appeals decision, and remanded the case to the Court of Appeals, which adhered on remand to its decision. *See State v. Pichardo*, 356 Or 574, 342 P3d 87 (2014) (allowing, vacating, and remanding); *State v. Pichardo*, 275 Or App 49, 364 P3d 1 (2015) (adhering to initial decision). We allowed the state's petition for review from the decision on remand and now affirm the Court of Appeals decision.

On August 2, 2011, Officer Long and his partner were on patrol in Gresham.[1] They received a report from the dispatcher that other officers had tried to execute an arrest warrant on a person named Hamilton, who had fled. The dispatcher described Hamilton and said that he had last been seen jumping a fence at 18837 SE Yamhill Street and running west. The dispatcher added that Hamilton had discarded a backpack as he fled.

Long and his partner drove to the area near SE 188th Avenue and Yamhill Street. While Long's patrol car was traveling eastbound on Yamhill Street, he noticed defendant's car stopped in the middle of a traffic lane on SE 187th Avenue, approximately one block from the area where Hamilton had fled. Long saw a person who matched Hamilton's description (and who turned out to be Hamilton) running towards defendant's car. Hamilton opened the

---

[1] We take the facts from the evidence at the hearing on defendant's motion to suppress and state them consistently with the trial court's ruling.

front passenger door of defendant's car, jumped into the passenger's seat, and leaned the seat back. Based on what he saw, Long was "concerned that [defendant] was assisting [Hamilton] to get out of the area with officers chasing him" and that Hamilton could have passed contraband to defendant.

Long and his partner turned on their patrol car's overhead lights and, within 10 seconds of seeing Hamilton get into defendant's car, pulled their patrol car in front of defendant's car, blocking it from going forward. Other officers arrived with their patrol car's overhead lights activated and parked their car behind defendant's car, blocking it from backing up. Three officers removed Hamilton from defendant's car at gunpoint.

Long went to the driver's side of defendant's car. He told defendant "just to keep his hands where we could see them." Defendant put his hands on the steering wheel, and Long "covered" defendant while the other officers were taking Hamilton into custody. Long asked defendant to step out of the car, which he did. Long then asked defendant if he had a driver's license or insurance. Defendant replied that he had insurance but no driver's license. Long later testified that, "[a]t that point, I asked [defendant] if I could have consent to search him for any drugs," to which defendant replied, "Yes, you can." As Long began to pat defendant down, defendant told Long that he had heroin in his left pants pocket. After pulling a small plastic bag of heroin out of defendant's pocket, Long placed defendant under arrest for possession of a controlled substance.

The state charged defendant with possession of heroin. Before trial, defendant moved to suppress the evidence resulting from the stop. At the hearing on that motion, Long testified that he stopped defendant for impeding traffic in violation of ORS 811.130. Later, he added that he "was concerned that [defendant] was assisting the other person to get out of the area with officers chasing him." The trial court found that the stop of defendant's car was supported by reasonable suspicion, and it rejected defendant's argument that Long unreasonably extended the stop by asking for consent to search defendant for drugs. After the trial court denied

defendant's suppression motion, defendant entered a conditional guilty plea, which preserved his right to appeal the trial court's pretrial ruling. *See* ORS 135.335 (authorizing conditional pleas).

On appeal, the state argued that the stop was justified because the officers reasonably suspected that defendant was attempting to help Hamilton evade the police in violation of ORS 162.325 or ORS 162.247.[2] Relying on Court of Appeals cases, the state argued that "'no authority supports the proposition that an officer cannot, during the course of a [criminal] stop that is supported by reasonable suspicion * * *, inquire whether the stopped person is carrying weapons or contraband.'" (Quoting *State v. Lamb*, 249 Or App 335, 342, 277 P3d 581 (2012)).

The Court of Appeals disagreed. *Pichardo*, 263 Or App at 8. It explained that asking an unrelated question that prolongs a stop beyond the time ordinarily required to complete it violates Article I, section 9, unless the officer has independent reasonable suspicion to justify the additional detention. *Id.* at 5-6. The court concluded that, in this case, Officer Long's request for consent had extended the stop and that he did not have reasonable suspicion to believe that defendant possessed drugs. *Id.*[3] Accordingly, it held that Long's request violated Article I, section 9. Relying on *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), the court also held that defendant's consent did not attenuate that illegality. *Id.* at 8.

The state petitioned for review, arguing that Long's request for consent had not impermissibly extended the stop. It reasoned that the range of permissible questions in a criminal stop is greater than in a traffic stop, and it argued that, in the context of this case, Long's request for consent was constitutionally reasonable. The state also argued that defendant's consent was sufficient to attenuate

---

[2] ORS 162.325 makes it a crime to hinder prosecution, while ORS 162.247 makes it a crime to interfere with a police officer in the performance of his or her official duties.

[3] The state did not argue in the Court of Appeals that Long's request for consent was reasonably related to the stop, and the Court of Appeals did not address that issue explicitly. Rather, it appears to have assumed that the request was not reasonably related.

the taint of any illegality. This court allowed the state's petition for review, vacated the Court of Appeals decision, and remanded for further consideration in light of recent cases clarifying the attenuation analysis in *Hall*. *Pichardo*, 356 Or 574. On remand, the Court of Appeals adhered to its initial conclusion that defendant's consent had not attenuated the illegality. *Pichardo*, 275 Or App at 58.

On review, the state raises two issues. It argues initially that Long's request for consent did not unlawfully extend the stop because the request was reasonably related to the stop. Alternatively, it argues that, if Long's request did unlawfully extend the stop, defendant's consent was sufficient, in the context of this case, to attenuate that illegality. We begin with the first issue that the state raises.

The state's argument on that issue is narrow. The state does not dispute that, as a factual matter, Long's request for consent extended the stop. *Cf. State v. Rodgers*, 219 Or App 366, 372, 182 P3d 209 (2008) (recognizing that "an officer is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation"), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010).[4] The state also does not argue that Long developed a reasonable suspicion, during the course of the stop, that defendant possessed drugs, which would justify his request for consent even if the request were unrelated to the initial reasons for which he stopped defendant. Rather, the state's first argument focuses on one issue—whether Long's request was reasonably related to the stop.

On that issue, the state starts from the proposition that most of our cases addressing that issue have arisen in the context of traffic stops. The state reasons that traffic stops usually present discrete, narrowly focused issues while criminal stops can entail a far broader range of issues. It follows, the state contends, that a correspondingly broader range of inquiries will be reasonably related to criminal

---

[4] Because the state does not dispute that Long's request extended the stop, this case does not present the question whether unrelated questions that occur during an unavoidable lull are permissible under Article I, section 9, and we express no opinion on that issue.

stops than traffic stops. In the state's view, "in the context of a criminal investigatory stop, where the very purpose is to ferret out potential criminal activity, a request for consent to search, without more, will rarely run afoul of Article I, section 9." Building on that proposition, the state notes that "Long was concerned that Hamilton may have passed drugs or contraband to defendant when he got into the car." It follows, the state concludes, that

> "while Officer Long may not have had independent reasonable suspicion of drug activity, the request for consent was nonetheless reasonably related to the overall purpose of the investigative detention: exploring the relationship between defendant and Hamilton and determining whether defendant had committed a crime."

We note, as an initial matter, that the premise of the state's argument is correct. If Long's request for consent was "reasonably related" to the purpose of the detention, then the request did not extend the stop in violation of Article I, section 9. *State v. Watson*, 353 Or 768, 779, 305 P3d 94 (2013) (describing the reasoning in *State v. Fair*, 353 Or 588, 302 P3d 417 (2013)). Moreover, as the court clarified in *State v. Jimenez*, 357 Or 417, 427-29, 353 P3d 1227 (2015), a question may be reasonably related to a stop even though the question is not supported by reasonable suspicion; that is, Long did not have to have a reasonable suspicion that defendant possessed drugs for his request for consent to be reasonably related to the purpose of the stop. There must, however, be a "reasonable, circumstance-specific" relationship between the question and the purpose of the stop. *See id.* at 429.

As the state also notes, this court has not had occasion to consider when an officer's inquiries will be "reasonably related" to a criminal investigatory stop. Rather, the question whether an officer's inquiry was reasonably related to a stop has arisen, for the most part, in the context of traffic stops. *See Jimenez*, 357 Or at 419-20 (traffic offense); *Watson*, 353 Or at 769 (same); *but cf. Fair*, 353 Or at 605 (considering issue in the context of a stop "to question [a] citizen as a potential witness to or victim of a crime"). In this case, Long reasonably suspected that defendant was helping

Hamilton evade the police in violation of ORS 162.247.[5] That statute prohibits intentionally "prevent[ing] or attempt[ing] to preven[t] a peace officer * * * from performing the lawful duties of the officer with regards to another person." ORS 162.247.

We agree with the state that an investigation to determine whether criminal activity has occurred or is occurring—in this case, whether defendant intentionally attempted to prevent law enforcement officers from performing their duties—can entail a broader range of questions than an investigation to determine whether a defendant has committed a traffic violation, such as failing to signal a lane change. However, we do not agree with the state that "a request for consent to search, without more, will rarely run afoul of Article I, section 9." As *Jimenez* establishes, the state must be able to point to a "reasonable, circumstance-specific" relationship between the inquiry and the purpose of the detention, even though the circumstance-specific relationship need not rise to the level of reasonable suspicion of other criminal activity. *Jimenez*, 357 Or at 429.

Perhaps to demonstrate a reasonable, circumstance-specific relationship, the state notes that Hamilton had dropped a backpack, which could have contained drugs, as he fled the police, and it argues that Hamilton also could have passed drugs to defendant once he got in defendant's car. It follows, the state contends, that Long's request for consent was reasonably related to "exploring the relationship between defendant and Hamilton."

The relationship that the state perceives between Long's request for consent to search for drugs and the reason for the stop—to investigate whether defendant was helping Hamilton evade the police—seems tenuous for four cumulative reasons. First, the state's argument depends on the assumption that Hamilton fled from the police because

---

[5] The Court of Appeals noted that Long reasonably suspected that defendant also was violating ORS 162.325, which prohibits persons from committing certain acts "with intent to hinder the apprehension * * * of a person who has committed a crime punishable as a felony." The record, however, does not reflect that Hamilton had committed a felony. We accordingly limit our discussion to ORS 162.247.

he possessed drugs—an assumption that the state bases on the fact that Hamilton discarded his backpack as he fled. However, if Hamilton discarded his backpack to get rid of his drugs, then he would have had no drugs to give to defendant once he got in the car. For the factual predicate of state's argument to be valid, it is necessary to assume that Hamilton did not discard all his drugs as he fled but kept some drugs on his person, which he gave to defendant. Without any evidence explaining why Hamilton would have discarded some but not all his drugs as he fled, the factual premise on which the state's argument rests seems suspect.

Second, Long testified that approximately 10 seconds passed between the time that he saw Hamilton get into defendant's car and the time that Long and his partner arrived at the car. During that time, Long did not see Hamilton throw anything into the car or hand anything to defendant.[6] Rather, he saw Hamilton get into the car and lower the passenger seat, presumably to avoid detection. Other than the abstract possibility that Hamilton could have given something to defendant, Long had no perceived basis for thinking that any transfer had occurred. Moreover, if Long were correct that Hamilton had passed drugs to defendant, the transfer would had to have occurred within 10 seconds and without being observed by the officers. While possible, the occurrence of those events in such a brief span of time seems unlikely.

Third, Long's request for consent to search defendant for drugs seems an odd way of "exploring the relationship between defendant and Hamilton," which is the reason the state advances for saying that Long's request for consent was reasonably related to investigating whether defendant was helping Hamilton escape. A search of defendant's person for drugs would reveal, at most, that he had drugs on him. It would say nothing about where or when he got them. Indeed, Long testified that both the area and the "street in particular" where he came upon defendant's car was known for "[h]igh drug activity, *** [b]oth use and dealing." In light of that testimony, there may have been a good chance that

---

[6] Because Long was a passenger in the patrol car, he could focus on the interaction between defendant and Hamilton.

defendant would have drugs on him, but it was not because Hamilton had passed them to him.

Finally, we note that, until the state filed its brief on the merits in this court, the state had not argued that Long's request for consent was related to the stop, much less that the two events were related for the reason that the state now identifies. Indeed, in its initial brief in the Court of Appeals, the state suggested that, because the stop was for criminal purposes, Long's request need not be related to the reason for the stop. It may be that the state did not appreciate the need to establish a reasonable relationship between the request and the stop until this court issued its decisions in *Walton* and *Jimenez*, but the absence of any suggestion that the request was related to the stop until the state filed its brief on the merits in this court calls into question the validity of the rationale that the state now advances.

The reasonable relationship test that the court articulated in *Fair*, *Watson*, and *Jimenez* is not a demanding one. For example, the officers in *Fair* reasonably stopped the victim of a potential domestic assault to verify her identity. *See* 353 Or at 613 (upholding the officer's authority to stop the victim as a material witness). In doing so, the officers checked law enforcement records and asked the victim about previous arrests to see if her answers corresponded with the information on file for a person with the victim's maiden name. *Id.* at 614. The court explained that, in the particular circumstances of that case, those questions "were reasonably related *** to the reasons for temporarily detaining [the victim]"; that is, they permitted the officers to verify her identity and also to determine whether she was likely to have initiated the domestic abuse. *Id.* Given that relationship, the court concluded that, in making those inquiries, the officers had not unconstitutionally extended the stop. *Id.* In this case, by contrast, the link between Long's request for consent to search defendant for drugs and the reason for the stop—to investigate whether defendant was helping Hamilton evade the police—is too tenuous to establish that the request was reasonably related to the reason for the stop. We accordingly agree with the Court of Appeals that Long's request for consent extended the stop in violation of Article I, section 9.

The state argues alternatively that, even if Long's request unconstitutionally extended the stop, defendant's consent attenuated the illegality. Before turning to the state's argument, it is helpful to put it in context. Hamilton got into defendant's car on a residential cross-street in Gresham. Within 10 seconds, one police car had pulled in front of defendant's car with its overhead lights flashing, effectively blocking defendant from going forward. And a second police car, also with its overhead lights flashing, pulled up behind defendant's car, effectively blocking him from backing up. Three officers got out of the patrol cars, went to the passenger's side of defendant's car, and took Hamilton out of defendant's car at gunpoint. A fourth officer (Long) went to the driver's side of the car and told defendant to put his hands on the steering wheel where Long could see them.

Once the three officers had taken Hamilton into custody, Long asked defendant to step out of the car. When defendant did so, Long asked if defendant had insurance or a license. Defendant said he had insurance but no license, and Long "asked him if [he] could have consent to search him for any drugs." Defendant replied, "Yes, you can."

In holding that defendant's consent was not sufficient to attenuate the illegality, the Court of Appeals noted the temporal proximity between the illegality and the request for consent and the absence of any intervening circumstances. *Pichardo*, 275 Or App at 54-55. It also noted that, although the police did not engage in threatening behavior, their conduct was "moderately flagrant" because it was well established that unrelated questions that occur outside of an unavoidable lull violate Article I, section 9. *Id.* at 55. Finally, the Court of Appeals found it "decisive" that "[p]rocuring defendant's consent to an exploratory search for drugs and obtaining drug-related evidence w[ere], necessarily, the purpose and intended consequence of the police misconduct in this case." *Id.* at 56. Given those considerations, the court concluded that defendant's consent did not attenuate the taint of the illegality. *Id.* at 58.

Although we agree with the Court of Appeals that defendant's consent did not attenuate the illegality, we

analyze that issue differently than the Court of Appeals did. In *State v. Unger*, 356 Or 59, 333 P3d 1009 (2014), this court clarified its earlier attenuation analysis in *Hall*. The court rejected the proposition that consent that follows closely on an illegality without any intervening circumstances invariably will be a product of the illegality. *Id.* at 78. The court also disagreed with *Hall* that the question whether a defendant's consent will attenuate the illegality turns on whether the officer asked for consent or whether the defendant volunteered it.[7] *Id.* at 78-79. The court explained that the question turns instead on a fact-specific analysis of whether the defendant's consent is "unrelated or only tenuously related to the prior illegal police conduct." *Id.* at 79.

The court noted that the following factors may bear on that analysis: the temporal proximity between the illegality and the consent; the presence of any intervening circumstances, such as *Miranda* warnings; the purpose and flagrancy of the police conduct; and the nature of the illegal conduct—*i.e.*, whether it is intrusive, extended, or severe. *Id.* at 80-83. As the court explained in *Unger*, "ignoring the very different effects that police conduct may have on an individual's consent to a search is neither reasonable nor constitutionally required." *Id.* at 83.

In this case, defendant's consent followed immediately on Long's request, which unlawfully extended the stop. Moreover, there were no intervening circumstances, such as *Miranda* or other warnings. However, as we held in *Unger* and *State v. Musser*, 356 Or 148, 335 P3d 814 (2014), the fact that consent follows closely on the illegality does not necessarily mean that the consent is the product of the illegality. *Unger*, 356 Or at 77; *Musser*, 356 Or at 155. Rather, the nature of the police conduct matters, as does whether the police traded on information that they obtained as a result of the illegality to seek or obtain the defendant's consent. *Musser*, 356 Or at 155-57 (discussing "nonexclusive

---

[7] After noting the temporal proximity and absence of intervening circumstances, the Court of Appeals found it "decisive" that Long had asked for and received defendant's consent to search. *Pichardo*, 275 Or App at 58. That reasoning is difficult to square with *Unger*, which held that the fact that an officer asks for consent to search does not necessarily mean that the defendant's consent was insufficient to attenuate the taint of the illegality. *See Unger*, 356 Or at 78-79.

considerations \* \* \* in reviewing the totality of the circumstances to determine whether the police 'exploited' or 'took advantage' of their unlawful conduct").

In our view, the dispositive factor in this case is the nature of the officers' conduct during the stop. This was not a case like *Unger* where the officer went to the back of the defendant's house, knocked on the door, identified himself as "Kevin \* \* \* with the sheriff's office," and explained that there had been a complaint about the house, which he was investigating. 356 Or at 62. Nor is it a case like *State v. Lorenzo*, 356 Or 134, 335 P3d 821 (2014), where the officer went to the defendant's apartment to check on the defendant's welfare, knocked on the defendant's bedroom door, and said, "Police, Jeff, are you okay?"[8] *Id.* at 137. Instead, in this case, within 10 seconds after Hamilton got into defendant's car, two police cars with their overhead lights flashing surrounded defendant's car and blocked it from moving. Three officers took Hamilton out of defendant's car at gunpoint, while the fourth officer (Long) approached defendant and directed him to remain in the car with his hands on the wheel until Hamilton had been placed under arrest. Long's request for consent both extended the stop unconstitutionally and followed immediately on the officers' show of force.

Given that show of force, we are not persuaded that defendant's consent, while voluntary, was sufficient to attenuate the taint of the illegal extension of the stop. *Cf. Unger*, 356 Or at 73 (distinguishing exploitation from voluntariness). As we explained in *Musser*,

> "Police obviously need reasonable leeway to investigate and prevent crimes, and monitoring locations where criminal activity frequently occurs \* \* \* is part of good police work. But police are not authorized to detain and question citizens merely to 'make sure they are not doing anything wrong.'"

356 Or at 158-59. What occurred here was not substantially different. In this case, Long extended the stop, not to ask a question that was reasonably related to the stop but to

---

[8] In *Lorenzo*, the officer opened the apartment door, put his arm inside the apartment and knocked on the defendant's closed bedroom door, but did not otherwise enter the apartment. 356 Or at 137.

ask an unrelated question about other criminal conduct for which he had no reasonable suspicion. Given that act and the officers' show of force, we conclude, as we did in *Musser*, that defendant's consent was not sufficient to attenuate the taint of the illegality.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.