***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted July 29, reversed November 9, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN COLBY DAVIS,
*Defendant-Appellant.*

Josephine County Circuit Court
19CR67322; A175028

Matthew G. Galli, Judge.

Bruce A. Myers, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Armstrong, Senior Judge.

JOYCE, J.

Reversed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine. In his first and second assignments of error, defendant argues that the trial court erred in denying his motion to suppress evidence that an officer discovered on defendant. Because we conclude that the state failed to establish that the officer's inquiry about weapons was permissible, we reverse.[1]

We review the denial of defendant's motion to suppress for legal error. *State v. Heise-Fay*, 274 Or App 196, 201, 360 P3d 615 (2015). We are bound by the trial court's express and implicit factual findings, so long as constitutionally sufficient evidence in the record supports them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). "If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Id.* We thus state the facts, which are taken from the officer's testimony at the motion to suppress hearing, consistently with our standard of review.

Officer Pruitt responded to a call of a "disturbance" at a gas station around 10:00 p.m. Dispatch told Pruitt that a male was "screaming at a female" in a vehicle and that the "female is crying." The person reporting the disturbance said that the "male and female are the only occupants in the vehicle."

When Pruitt arrived to the scene, he saw several cars in the parking lot, gas station attendants, and people in the gas station store. Pruitt could hear the "male and female yelling at each other." At that point, he suspected that the car's occupants could be engaged in disorderly conduct or harassment and he did not know whether—or if—one of the occupants was an "aggressive party." Pruitt introduced himself to the male, who is the defendant in this case.

---

[1] Our resolution of defendant's first and second claims of error obviates the need to address his third assignment of error, which challenges the trial court's imposition of court-appointed attorney fees. Similarly, it obviates the need to address his fourth and fifth assignments of error relating to certain special conditions of probation.

Defendant said "something to the effect of we're just arguing. She's being overdramatic. She's being really immature." Defendant was also calling the woman in the car, Sullivan, names.

Pruitt asked defendant to step out of the car. As defendant was getting out of the car, Pruitt asked defendant if he had any weapons on him. Defendant said no. Pruitt also asked for and obtained defendant's consent to pat him down for weapons; he found none. Pruitt then asked defendant if there were any weapons in the vehicle. Defendant responded that there was a gun in the car. Defendant then explained that he did not know whether he had taken the gun out of his car earlier in the day or if it was still there. A second responding officer later found a concealed gun underneath the driver's seat. Pruitt handcuffed defendant and searched him again. In defendant's pocket, Pruitt found a baggie of methamphetamine. The state subsequently charged him with possession of methamphetamine.

Defendant moved to suppress the drug evidence. As relevant to the question on appeal, he asserted that Pruitt's question about the presence of weapons in the vehicle was not justified by the officer safety exception to the warrant requirement or the community caretaking or emergency aid exceptions to the warrant requirement, and was not supported by reasonable suspicion "of any criminal wrongdoing[.]" The state, relying on *State v. Miller*, 363 Or 374, 422 P3d 240, *adh'd to as modified on recons*, 363 Or 742, 428 P3d 899 (2018), argued that Pruitt's weapons inquiry was permitted because he was investigating a domestic disturbance by himself and he reasonably believed that there could be a safety risk to himself or others, including defendant or Sullivan, if weapons were present.

At the suppression hearing, Pruitt testified consistently with the facts set forth above. Additionally, he testified that he had asked defendant to get out of the car for several reasons: Pruitt was the only responding officer and he wanted to de-escalate and separate defendant from Sullivan to "make it safer for [him], safer for them, safer for the public[.]" He also explained that he did not know during the course of his investigation whether defendant

or Sullivan (or neither) was an "aggressor" in the possible domestic violence. Additionally, the fact that defendant was calling Sullivan names and minimizing the incident raised Pruitt's suspicions:

> "I know from training and experience that when I'm dealing with kind of domestic violence-type stuff, you know, maybe there's times where someone can try and really downplay that when maybe there is something going on, which kind of furthered my need to investigate what this disturbance was about."

The trial court denied defendant's motion to suppress. It agreed with defendant that Pruitt's inquiry about weapons was not justified by the community caretaking or emergency aid exceptions nor by "officer safety concerns." The trial court concluded, however, that the question about weapons was justified under ORS 131.615. That statute allows an officer who "reasonably suspects that a person has committed or is about to commit a crime" to stop that person and "make a reasonable inquiry." ORS 131.615. The trial court reasoned that Pruitt was concerned about the possibility of domestic violence and disorderly conduct and therefore Pruitt lawfully stopped defendant. The trial court further observed that ORS 131.615(3)(c) and (4) allow an officer to ask about the presence of weapons and consent to search for weapons in certain circumstances and that, under those statutes, Pruitt's question about weapons was therefore permissible.

Defendant sought reconsideration of the trial court's ruling on the motion to suppress in light of *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), a case that addressed the subject matter limitations that apply to encounters between officers and community members. The trial court denied defendant's motion and adhered to its prior decision. The trial court noted that *Arreola-Botello* did not abrogate ORS 131.615, the statute upon which it had relied initially in denying defendant's motion to suppress; to the contrary, the court in *Arreola-Botello* specifically noted that the Oregon legislature simply sought to codify the constitutional limitations on detentions of people who are subject to police investigations. The trial court then concluded that *Arreola-Botello* stood for the proposition that inquiries and

requests by officers must be reasonably related to the reason that the officer is on the scene in the first place. The trial court found that Pruitt's actions were consistent with the limitations described in *Arreola-Botello*. More specifically, the trial court found that Pruitt was called to the scene based on reports "of a man and woman screaming at each other within a vehicle, that was only verbal 'so far.'" The trial court further found that Pruitt was "concerned about domestic violence" when he arrived at the scene because defendant and his companion were still screaming at one another and defendant attempted to minimize the incident. In light of those facts, and noting that it "is not unusual for a verbal argument of this degree to escalate into hitting or slapping; and in some cases, even the use of a weapon[,]" the trial court concluded that Pruitt "had reasonable suspicion that an assault had occurred or was about to occur." In short, Pruitt's inquiry about a weapon "was reasonably related" to the stop.

On appeal, defendant reprises his argument that Pruitt's question about the presence of weapons in the car was unlawful. The parties agree that the weapons inquiry causally contributed to the discovery of the methamphetamine. The single question we must resolve is whether Pruitt exceeded the "constitutionally permissible boundaries of the stop." *Miller*, 363 Or at 379. Under Article I, section 9, of the Oregon Constitution, a stop that is "reasonable for a limited investigatory purpose is not necessarily reasonable for all purposes[.]" *Arreola-Botello*, 365 Or at 711; *see also id.* at 712 (concluding that ORS 131.615 is consistent with Article I, section 9's limitations). Rather, an officer who has seized a person is limited to weapon inquiries that "are reasonably related to [the officer's] investigation and reasonably necessary to effectuate it[.]" *State v. Jimenez*, 357 Or 417, 429, 353 P3d 1227 (2015); *Miller*, 363 Or at 381 (applying *Jimenez* to stops based on reasonable suspicion to investigate a crime). To demonstrate that a weapons inquiry meets that standard, the state must show that "(1) the officer perceived a circumstance-specific danger and decided that an inquiry about weapons was necessary to address that danger; and (2) the officer's perception and decision were objectively reasonable." *Jimenez*, 357 Or at 430. Moreover, "the officer's

safety concerns need not arise from facts particular to the detained individual; they can arise from the totality of the circumstances that the officer faces[,]" including concerns for the safety of others. *Id.* at 429, 430.

As his arguments are framed below and on appeal, we understand defendant to acknowledge that Pruitt had some generalized subjective safety concerns. But in defendant's view, those generalized concerns did not justify the inquiry because Pruitt failed to articulate any circumstance-specific danger to justify the inquiry about weapons, which in turn necessarily means that Pruitt's perceptions were not objectively reasonable.

We agree. Here, as in *Jimenez*, the record is devoid of any evidence that Pruitt had circumstance-specific concerns related to the stop about the presence of weapons that could have been mitigated by asking defendant whether there was a weapon in the car. *See Miller*, 363 Or at 384-85 (observing that in *Jimenez*, "[a]lthough the state argued that various circumstances could have given rise to a perception of danger, we emphasized that the officer did not identify any of those circumstances as giving rise to a perception of danger"); *compare id.* at 385-86 (concluding that "the evidence permitted the trial court to find that the officer * * * had perceived a danger based on circumstances specific to the stop of [the] defendant" where "the officer * * * explained why the circumstances of [the] stop had caused him to have concern for his safety"). Pruitt did not testify, for example, that defendant's or Sullivan's actions or demeanor had given rise to safety concerns. Nor did he provide details about how or why domestic disturbance investigations pose particular safety concerns that a question about the presence of weapons in the car would help alleviate. *Compare Jimenez*, 357 Or at 431 (observing that the officer did not testify that the defendant's demeanor or motions gave rise to safety concerns that could be addressed by asking about weapons) *with Miller*, 363 Or at 387-88 (question about weapons permissible where the officer testified that performing the field sobriety tests would put him "in a compromising situation[,]" that "[t]here is absolutely nothing safe about administering field sobriety tests on the side of the road at 12:30 in the morning"; and that, to address that risk, he needed

to know if the defendant was carrying a weapon). Pruitt testified that he had asked defendant to get out of the car for safety reasons, but he neither explained what those safety concerns were nor, more importantly, did he explain what, if any, safety concerns gave rise to the question about the presence of weapons in the car once defendant was out of the car.

In short, the record in this case simply does not support a finding that the officer in fact perceived a danger that could be alleviated by asking about weapons in the car, which is necessary to establish a logical relationship between the weapons inquiry and the stop. *See Jimenez*, 357 Or at 429 ("[I]f the officer does not have at least a circumstance-specific safety concern, then the officer's weapons inquiry has no logical relationship to the * * * investigation."). We appreciate, as the Supreme Court has observed, that the test for whether an officer's questions about the presence of weapons is permissible "is not a demanding one." *State v. Marcell*, 306 Or App 124, 125, 473 P3d 143 (2020) (quoting *State v. Pichardo*, 360 Or 754, 762, 388 P3d 320 (2017)). And we can envision any number of reasons that the officer here might have had concerns about the presence of weapons in the car, given the circumstances that he faced. But the state needed to establish the necessary facts by evidence; it is not enough for this court or the trial court to infer what the officer's concerns were in the absence of evidence in the record to support that perception in these circumstances. *Jimenez*, 357 Or at 426 ("When an officer does not reasonably perceive a danger, we will not presume that such danger nevertheless exists or that the officer's inquiry about weapons would address such danger."); *id.* at 431 ("[W]e cannot infer [the necessary] facts in every case or in this case in particular.").

Reversed.